PeR Curiam:
This case was referred to Trial Commissioner William E. Day and is before the court on defendant’s motion to dismiss upon the close of the plaintiff’s case in *394 chief, pursuant to Eule 67(c), the trial commissioner’s memorandum opinion, findings of fact, and recommendation for conclusions of law, plaintiff’s exceptions thereto, the briefs of the parties and oral argument of counsel. Since the court is in agreement with the opinion, findings of fact, and recommendation of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is not entitled to recover, defendant’s motion to dismiss the petition under Eule 67 (c) is granted and the petition is dismissed.
OrinioN oe Commissioner
Day, Commissioner: This case is before the court on the defendant’s motion to dismiss upon the close of the plaintiff’s case in chief, pursuant to Eule 67(c).
Although the testimony of one witness for the defendant was heard after the defendant’s motion was made, in order to preserve the testimony of such witness who was then en route to foreign duty, that testimony has been completely disregarded for the purpose of this motion.
The plaintiff, a naturalized citizen of the United States, and a veteran of military service during World War II, had been employed as a civilian in the Department of State at Washington. He was appointed as a Foreign Service officer in September 1955, and upon confirmation by the Senate, entered upon the duties of that office in December 1955.
The plaintiff was assigned to duties as a visa officer, with the title of Second Secretary and Vice Consul at the Embassy at Stockholm, Sweden, arriving there in April 1956. He remained at this post of duty until August 8, 1958 when he returned to the United States on home leave. He had, meanwhile, been assigned to duty at the Embassy in Eome, Italy, upon the termination of his leave, arriving there in the latter part of October 1958.
He remained at Eome until November 30, 1959, when he was selected-out of the Foreign Service and “retired”, pursuant to the provisions of sections 633 and 634 of the Foreign Service Act of 1946, as amended. The Act was amended by Public Law 22, approved April 5,1955, 69 Stat. 24, known *395 as the Foreign Service' Act Amendments of 1955, section 633 of which provides:
SELECTION-OUT
Seo. 633. (a) The Secretary shall prescribe regulations concerning—
(1) the maximum period during which any Foreign Service officer 'below the class of career minister shall be permitted to remain in class without promotion; and
(2) the standard of performance which any such officer must maintain to remain in the Service.
(b) Any Foreign Service officer below the class of career minister who does not receive a promotion to a higher class within the specified period or who fails to meet the standard of performance required of officers of his class shall be retired from the Service and receive benefits in accordance with the provisions of section 634.
The Secretary, pursuant to that Act, has issued regulations which are found in the Foreign Service Manual, section 731.3, in which substandard performance is deemed to be “* * * if his performance in the class is judged by the Selection Board to be clearly below that which the Board has determined to be a satisfactory level for the class, based on precepts approved by the Board of the Foreign Service.” The regulations further provide, at section 731.4, as follows:

Designation for Selection-Out

Each Selection Board finding that an officer should be denied the next in-class increase, or that he is in the “selection-out zone”, or both, will be reviewed by the Deputy Under Secretary for Administration. If approved, those findings concerning “selection-out zone” ratings shall be subjected to the review of a Selection-Out Review Board, appointed by the Deputy Under Secretary for Administration. If this task is sufficiently great, it may be divided between two or more Boards. This Board or Boards shall designate, from among the officers whose performance has been determined to be substandard, those officers whose records do not warrant retention in class, and such officers shall be terminated.
Under the regulations referred to above, the plaintiff was advised by letter of July 6, 1959 from the Deputy Director of Personnel, Department of State, that he was included *396 among those officers of class 6 for whom it had been determined that retirement would be best for the plaintiff and for the Foreign Service, and that the Department proposed to record the plaintiff’s separation from the Service as “retirement” to be effective on September 30, 1959, which date was later changed to November 30,1959. The letter implies that other Foreign Service officers in class 6 were likewise selected-out and retired.
Along with the letter referred to, the plaintiff was furnished with a copy of the Precept for Early Eetirement Panels and the finding of the Selection Board and of the Early Eetirement Panel, which indicated that the plaintiff’s record of performance had been found by such Panel and Board to have been within the lowest 3 percent of his class; that his performance had been found to be substandard because it did not measure up to the standards of his class in terms of a satisfactory level of industry, initiative and forcefulness ; and that his overall performance had fallen below the standard of an FSO-6.
It is clear from the record that in large measure, the findings of the Early Eetirement Panel and of the Selection Board had been based upon efficiency reports which had been submitted by the appropriate officials at the Embassy at Stockholm. That is not to say, however, that the selection-out action was based entirely upon the information contained in such efficiency reports.
The plaintiff attacks the involuntary retirement as arbitrary, capricious and discriminatory, in that it was the result of an unlawful conspiracy on the part of the rating and reviewing officials who submitted the efficiency reports on the plaintiff’s performance of duty at Stockholm. In addition, the plaintiff contends that his removal for unsatisfactory service could not lawfully be effected without a hearing.
EAIUORE TO GRANT THE PLAINTIFF A HEARING
It is true, as the plaintiff has alleged, he was not granted a hearing. The plaintiff’s brief points only to Title 22 of the U.S. Code and says that that title provides for a hearing *397 before a Foreign. Service officer can be removed for unsatisfactory service. The plaintiff refers, of course, to section 1007 of that title in the Code. That section is found in section 637 of the Foreign Service Act of 1946, 60 Stat. 999, 1016. It reads as follows:
‡ ‡
SEPARATION FOB UNSATISFACTORY PERFORMANCE OF DUTY
Seo. 637. (a) The Secretary may, under such regulations as he may prescribe, separate from the Service any Foreign Service officer above class 6 [1] on account of the unsatisfactory performance of his duties; 'but no such officer shall be so separated from the Service until he shall have been granted a hearing by the Board of the Foreign Service and the unsatisfactory performance of his duties shall have been established at such hearing.
H* v
When the plaintiff was “retired” or selected-out “because he did not measure up to the standards of his class” and also because the action was being taken under sections 633 and 634 of the Foreign Service Act, he was not entitled to a hearing, since none is provided under sections 633 and 634. The standards had been set by regulation and the selection boards had been admonished to select-out at least the bottom 3 percent of each class of officer. Such regulations had been specifically authorized in the Act.
It would appear that Congress, in repealing the earlier section 633 of the Foreign Service Act and in enacting in 1955, the section 633 of the present statute, as quoted above, which required the retirement (without a hearing) of an officer “who fails to meet the standard of performance of his class * * *” knew of its 1946 enactment providing for the separation (presumably by discharge) of an officer “on account of the unsatisfactory performance of his duty, * * *” but requiring a hearing by the Board on Foreign Service in the latter instance. In considering the proposed amendments to the Foreign Service Act which resulted in the enactment, in 1955, of the section of the Act under which plaintiff’s selection-out was effected, the House of Representa *398 tives bad before it the report of its Committee on Foreign Affairs, Eeport No. 229 which said at page 12:
* * * This section also establishes the concept of maintenance of a specified standard of performance as a prerequisite of remaining in the Service. This is now done by regulation and it is considered advisable to give it the specific sanction of law. It should he observed that this section is not a substitute for the provisions governing separations for cause. (Sec. 637 and 638 of the Foreign Service Act of 1946) [Emphasis supplied.]
It follows then, that the two methods for separating officers of the Foreign Service, by selection-out without a hearing under section 633, and by discharge after a hearing under section 637, stand on an equal footing and both methods have the approval of the Congress. Thus, the plaintiff was not entitled to a hearing when he was selected-out.
CONSPIRACY
The court is not advised by the plaintiff’s evidence as to the composition of either the Selection Board or the Early Eetirement Panel, both of which recommended plaintiff’s selection-out. The charge of conspiracy is therefore leveled at those officials at the Embassy in Stockholm, who had a part in reporting on the plaintiff’s performance of duty. As to one of these, the record shows that there was never any friction between the plaintiff and the rating officer. There was some testimony by the plaintiff and his wife that one of the high-ranking Foreign Service officers, who was Charge d’Affaires and a member of a review panel, displayed some impatience with the plaintiff a few times and was not friendly with him ah some social functions attended by Embassy Officials.
It is observed that while the rating officer for each of the four efficiency reports on the plaintiff’s performance at Stockholm was the same individual, there were changes in the makeup as to the review panels. The plaintiff’s evidence falls far short of being clear evidence of arbitrary or capricious action or lack of good faith on the part of the officers of the Department of State in effecting his selection-out. Alexander v. United States, 148 Ct. Cl. 24, 29 (1960).
*399 The record shows that the plaintiff’s selection-out complied with the provisions of the statute and regulations in all respects.
Unfortunately for him, the plaintiff is a casualty of the selection-out policy of the Department of State, having as its basic purpose the separation of less able persons in the Foreign Service to provide room for promotion of more able persons lower in rank.
FINDINGS on Fact
1. Norbert Chwat, the plaintiff, was “retired” or separated from his position in the Foreign Service of the United States Department of State. He is a naturalized citizen of the United States and a veteran of military service during World War II. His home address is in Forest Hills, New York. At the time the petition was filed in 1962 he was 37 years of age.
2. The plaintiff was employed in the Department of State in Washington, D.C. from March 11,1948. Having received various promotions in grade while there employed, he was appointed a Foreign Service officer, grade 5, on September 12, 1955. Upon Senate confirmation, he entered upon his duties as such officer on December 19, 1955 at the salary of $6145 per annum.
3. On March 11, 1956, the plaintiff ivas assigned as visa officer with the title of Second Secretary and Vice Consul at the Embassy at Stockholm, Sweden. He arrived at this post on April 22, 1956, where he was assigned as officer in charge of visa correspondence and files unit.
4. The plaintiff remained at his post of duty in Stockholm until August 8, 1958 when he came to the United States on home leave. He had, in the meantime been reassigned to duty at the Embassy in Nome, Italy, upon the termination of his leave. He arrived in Nome on October 29,1958 and entered upon his duties there until November 30, 1959, when he was separated from the Service as will be further explained.
5. Under the Foreign Service Act of 1946, as amended, and regulations of the Department of State issued pursuant thereto, a system of separation by selection-out of Foreign
*400 Service officers was in effect during ail times material herein. The stated policy of such regulations provides in part:
731.2 * * * Any Foreign Service officer below the class of career minister * * * who fails to meet the standard of performance required of officers of his class shall be retired from the Service * * *.
6. The regulations which are contained in the Foreign Service manual further provide:
731.3 Substandard Performance
An officer shall be considered to have rendered substandard performance in his class if his performance in the class is judged by the Selection Board to be clearly below that which the Board has determined to be a satisfactory level for the class, based on Precepts approved by the Board of the Foreign Service. In each instance in which a Selection Board makes such a judgement, the Board will specify whether the officer is to be denied the next in-class increase or whether the officer should be considered in the “selection-out zone” or both.
731.4 Designation for Selection-Out
Each Selection Board finding that an officer should be denied the next in-class increase, or that he is in the “selection-out zone”, or both, will be reviewed by the Deputy Under Secretary for Administration. If approved, those findings concerning “selection-out zone” ratings shall be subjected to the review of a Selection-Out Review Board, appointed by the Deputy Under Secretary for Administration. If this task is sufficiently great, it may be divided between two or more Boards. This Board or Boards shall designate, from among the officers whose performance has been determined to be substandard, those officers whose records do not warrant retention in class, and such officers shall be terminated.
7. On July 6, 1959, the Deputy Director of Personnel, Department of State, wrote a letter to the plaintiff advising him that he was included among those officers of class 6[2] for whom it had been determined that retirement pursuant to sections 633 and 634 of the Foreign Service Act of 1946, as amended, would be best for the plaintiff and for the For *401 eign Service. The plaintiff was further advised by the letter that the Department proposed to record the plaintiff’s separation from the service as “retirement” to be effective on September 30, 1959, suggesting that this date might be changed to a later date if that date seriously inconvenienced the plaintiff.
8. The letter referred to in the preceding finding enclosed a copy of the Precept for the Early Retirement Panels and also the Finding of Selection Board and Early Retirement Panel. The Finding of the Selection Board and of the Early Retirement Panel is quoted in full below:
JUNE 4, 1959
OIIWAT, NORBERT, ESO-6
Selection Board F of the Twelfth Selection Boards, in reporting its finding that the performance of Mr. Chwat was substandard for his class and recommending his placement in the Selection Out Zone, stated:
“Based upon a comparative review of official records of Foreign Service Officers of Class 6, the performance of Norbert Chwat is judged by Selection Board F to be substandard and in the selection out zone because he did not measure up to the standards of his class in terms of a satisfactory level of industry, initiative and forcefulness. The Board finds that, despite some improvements in the past year, his over-all performance still falls below the standard expected of an FSO-6.”
Early Retirement Panel “C”, for Class 6, having carefully reviewed the record of this officer in accordance with the Precept for the Early Retirement Panels, unanimously:
1. Affirms the finding of Board F, to the effect that this officer’s performance has been substandard, for his class.
2. Affirms the Selection Board’s action in placing him in the Selection Out Zone.
3. Finds this officer’s record does not warrant his retention in class.
4. Finds that he should be terminated.
9. The Precept for Early Retirement Panels which is in evidence as plaintiff’s exhibit 51, explained in general the objectives to be attained in eliminating Foreign Service offi *402 cers from the Foreign Service. It explained that in August 1958 a new procedure had been inaugurated for the early retirement of Foreign Service officers who fail to meet the high standards of performance of their class. Pertinent portions of the Precept are quoted below:
$ $ * * *
The Precepts to the Twelfth Selection Boards provided that the standards of satisfactory performance for each class shall be set so high that at least the lowest 3 percent of the class shall be considered as below standard and placed in a “selection-out” zone.
These Boards placed 3 or more percent of the officers of each class in such a zone. The records of these officers have been carefully studied in the Administrative area of the Department. As a result of these studies, it has been decided that the names of some of them should be submitted to Panels A, B, and C for final consideration. The files of the officers whose names are not being sent for your consideration are, however, being placed before you for your inspection in order that you may have a complete picture of the officers in each class whom the Selection Boards designated for the “selection-out” zones.
% # % % ‡
We face a grave problem with respect to officers in Classes 4, 5, and 6. Many of these officers will have spent a large portion of their best years in the service of the Government. Many of them have performed valuable services for the government in the past. Some of them may be regarded as casulties [sic] of the Service. Most of them have dependents. To turn them loose without annuities at an age when it would not be easy for them to find suitable employment on the ground that they no longer measure up to the standards prescribed for their classes might well give the Department a reputation for callousness in dealing with those who have entrusted their lives and their careers to it. On the other hand, it may not seem fair to retire immediately those whose age and years of service render them eligible for annuities while retaining in the Service those of no greater ability merely because they are not entitled to annuities. In this difficult situation I am placing before you for final decision from classes 4, 5, and 6 only (a) officers under 40 years of age, who are presumably young enough to find other suitable employment; (b) officers 40 and above whose performance *403 appears sufficiently poor to warrant separation without an annuity; and (c) officers in those classes who are old enough and have sufficient length of service to have earned the right to voluntary retirement on an annuity. This is a human problem; and human problems must be given careful consideration by those who have responsibility for the welfare and morale of the far flung members of the Foreign Service. Any views which the Panels may have to contribute with regard to this problem will be welcome.
10. The plaintiff, on July 14, 1959, wrote to the Deputy Director of Personnel expressing his surprise and disappointment at the action of the Department in separating him.
11. On July 23, 1959, the Deputy Director of Personnel sent the following letter to the plaintiff:
This is in reply to your letter of July 14,1959 relative to our correspondence concerning your retirement.
I have read with interest and care the statements contained in your letter and the attachment with respect to your background and experience and your intense desire for a career in the Foreign Service. Nevertheless, the Selection Board which met last September compared your record with that of all other members of the class and reached the conclusion that it was wise to recommend your retirement. This finding and your record were given a careful and thorough review by Department officials, who reached the conclusion that it was proper to place your case before a Retirement Panel for a final decision. This has been done and our Regulations afford no additional reconsideration nor appeal. We recognize that any system of evaluation of people, expecially [sic] at long range, may have some imperfections, but experience over a number of years supported by the comments of Public Members who have participated in the Board’s operations, leads us to conclude that ours is as fair as any other.
The Foreign Service is a demanding career and with the challenges which crowd upon it in these difficult days we must be extremely careful to identify those who may not, for one reason or another, be able to keep up in some way which may not be at all significant in other occupations. We realize that our system may mean the return to private life of some officers who have considerable ability and potential, but we are moved by an anxiety *404 that, unless all available evidence supports substantially the retention of an officer, we should in justice to his own best interests and those of the Government, release him for other pursuits.
12. Thereafter, the plaintiff was given an extension of time until November 30, 1959, and he was terminated on that date. He was paid certain benefits as provided by statute and regulations issued under such statute.
13. During the plaintiff’s employment as a Foreign Service officer, he was given a total of five efficiency reports. (Four related to his work at Stockholm and one report was related to his work at his assignment in Rome). The first report for the period from April 22, 1956 until July 13, 1956 was prepared by Vice Consul Elvira P. Martin, Chief of the Visa Unit, as rating officer and reviewed by Robert W. Harding, Chief Consular Section. The overall rating was graded at 2, on a scale from a low of 1 to a high of 6.
14. On January 30, 1957, Mr. F. W. Darnell, Chief, Performance Evaluation Branch, Department of State in Washington wrote to the plaintiff. In the letter he advised plaintiff that the Tenth Selection Board had concluded their work and made a special finding in respect to the plaintiff. This finding was sent as an enclosure to the letter. Both the letter and the finding stressed the need for the plaintiff to improve his work performance.
15. The second efficiency report, covering the period from July 1, 1956 to May 31, 1957, was made by the same rating officer and the same reviewing officer. In addition to the above, the report received the attention of a review panel of three officers — -William P. Cochran, Jr., Charge d’Affaires; William A. Fowler, Counselor for Economic Affairs and Bruce L. McDaniel, Administrative Officer. The overall rating assigned was 4. The tenor of the narrative report of the rating officer was in general rather favorable to the plaintiff. The reviewing officer, while concurring in the rating, concluded that it “might be stated to be on the lenient side if anything.” The review panel was quite critical of the plaintiff. Their comments are quoted below:
The Review Panel devoted more time and discussion to Mr. CHWAT, than to any. other of the officers being *405 rated in Stockholm. Not having worked closely with him, the Panel is unable fully to evaluate his job-performance ; but it is not willing to go along with ratings of (4) for 1 — Ability, &■ — Initiative or 10 — Resourcefulness in Part II of the form. The Panel finds him below average on all three qualities, and lacking in both tact and industry, especially tact.
Mr. and Mrs. Chwat came to Stockholm with grandiose ideas of importance, and were inclined just to take over and organize the Embassy’s and American colony’s social life — or anyone else’s. They have both “quieted down” considerably, since last year, but they still both try much too hard in the field of representation — far beyond any conceivable relationship to his work. Both are willing workers at any community charity endeavor; but this is 'because of their over-ambition and their clear desire to make a big social splash.
In a job a full grade below his rank, his substantive work has shown some improvement over the past year, as he has gained in experience; but the preceding remarks are still valid. (This statement is based on a new discussion of his case with the Reviewing Officer.)
He seems to consider the Foreign Service a racket where all he has to do is figure the angles, and work them. He is an embarrassment to the Embassy, and should not be in a job where he meets the public. He and his wife are both intelligent, but they have no judgment — socially or otherwise — and no discrimination. On a comparative basis, then, the Panel is unable to approve a rating above (3), and would list at least a few factors in both Parts II and III, as only (2) at that.
16. On February 19, 1958 a copy of the finding of the Eleventh Selection Board was sent to the plaintiff by the Chief, Performance Evaluation Branch. The letter of transmittal advised plaintiff that the Board concluded that his “performance has failed to meet a reasonable standard for your class * * *” and that this determination had received the formal approval of the Department. As a result, the next step-increase in salary would be withheld in accordance with the appropriate regulation. The finding of the Eleventh Selection Board is quoted below:
It is the opinion of Board E of the Eleventh Selection Boards that, owing to his demonstrated inability to comprehend the role of a Foreign Service Officer and to ad *406 just to life at a post abroad, Mr. Norbert Cbwat falls below a satisfactory level for officers of Class 6, the third rung of the Foreign Service ladder, and that he is “marginal.”
Mr. Chwat was bom of a German father and Finnish mother and lived in Northern Europe until he was sixteen. He has a thorough knowledge of German, Swedish, Norwegian and Danish. In spite of this background he has failed completely to adapt himself to social patterns in Sweden.
Mr. Chwat’s performance file discloses that the Tenth Selection Board after carefully reviewing his performance record suggested that he be warned that his performance at Stockholm, his first foreign assignment, had been found wanting and stated: “If Mr. Chwat’s performance had been at the level indicated in this report (Stockholm report covering the period April 22, 1956 to July 17,1956) for a substantially longer period, the Board would have had no choice but to declare it marginal.”
Mr. Chwat’s most recent performance report from the Embassy at Stockholm (July 1, 1956-May. 31, 1957) gives bim an over-all rating of “4” with a rating “3” for industry and forcefulness. In the narrative section of the report the rating officer states “He has applied himself with greater seriousness to his work and has taken steps to correct misdirected notions about his position and his assignment.” The reviewing officer states,. “I should say the rating given might be stated on the lenient side, if anything.”
The Embassy’s review panel consisting of the Charge d’Affaires, the Economic Counselor and the Administrative Officer deemed it necessary to comment at considerable length in Mr. Chwat’s case. It states:
“The Keview Panel devoted more time and discussion to Mr. Chwat, than to any other of the officers being rated in Stockholm * * * Mr. and Mrs. Chwat came to Stockholm with grandiose ideas of importance, and were inclined just to take over and organize the Embassy’s and the American colony’s social life — or anyone else’s. They have both “quieted down” considerably, since last year, but they still both try much too hard in the field of representation — far beyond any conceivable relationship to his work * * * In a job a full grade below his rank, his substantive work has shown some improvement over the past year, as he has gained in experience; *407 but the preceding remarks are still valid * * *. He seems to consider the Foreign Service a racket where all he has to do is figure the angles, and work them. He is an embarrassment to the Embassy, and should not be in a job where he meets the public.”
The most recent performance report in Mr. Chwat’s dossier is that prepared by Inspector Richard W. Byrd on June 27,1957. Mr. Byrd rates Mr. Chwat’s performance as clearly meeting all requirements, but he too is struck by Mr. Chwat’s inability to adjust to the Foreign Service. Mr. Byrd states, “He (Mr. Chwat) thought it would be well for him to make an impression by entertaining. He has given parties about once every three weeks and has tried to make them original — Bingo, songs, etc. The staid and stolid Swedes have not enjoyed this, have not known how to take it, and the Chwats have unfortunately developed a little of a reputation of ‘climbers.’ Mr. Chwat has realized the error of his ideas about his job, but until now has not realized his misconceptions about his out-of-office activities.” In conclusion Mr. Byrd says, “The Inspector feels that Mr. Chwat’s point of view is somewhat less mature than might be expected in an officer of Class 6 * * *. He has not yet acquired a real understanding of what is expected of a Foreign Service Officer.”
17. Following receipt of the findings of the Eleventh Selection Board, the plaintiff wrote a six-page letter to the Ambassador at Stockholm. In it he stated that two of the three officers on the review panel disliked him personally and had shown it in several petty instances. The plaintiff also personally discussed with the Ambassador the adverse reports he had received.
18. The plaintiff was granted home leave and he left Stockholm about August 8,1958. Upon his arrival in the United States, he came to Washington and had discussions with several responsible Foreign Service officials concerning the adverse reports on his work performance. He requested that he be transferred to a post other than Sweden and this request was granted by an assignment to the Embassy in Rome.
19. In the meantime, the efficiency report on plaintiff’s performance of duty for the period June 1,1957 through May 31, 1958 was prepared by the Chief of the Visa Unit at Stockholm, reviewed by the Chief of the Consular Section and *408 further reviewed by a review panel of three officers. The overall rating assigned was 4 with three items rated 8 and seven at 5. The narrative comments by both the rating officer and the reviewing officer were in no way adverse to the plaintiff. The Deputy Chief of Mission, William P. Cochran, Jr., made a very critical comment with which two members of the review panel concurred. That comment reads as follows:

Comment by Deputy Chief of Mission:

I do not mean to kick a man when he is down, but I feel a responsibility both to the Department and to other officers in the Foreign Service; and I flatly refuse to concur in a 4 rating, which I consider unfair to every other officer who is rated 4. He does not exceed basic requirements. I do consider that there has been definite improvement over the past year, but he still does not meet anything more than the basic requirements, by my standards — if that. I consider him simply one of the tragic (tragic for him and tragic for the Service) misfits of Wristonization. Maybe he can do better at another post or another type of work; I doubt it, but feel he should be given the chance to try.
(s) Wiluiam P. CochraN, Jr.
20. After the plaintiff had been transferred to Pome a further efficiency report on plaintiff’s performance at Stockholm was prepared and submitted to the Department on December 3, 1958 covering the period June 1, 1958 to August 8, 1958. The rating officer assigned an overall rating of 3. The narrative report accompanying the rating officer’s evaluation for the first time was adverse to the plaintiff in a marked degree. It read, in part, as follows:
A. Personal
It appears to be the concensus that neither this officer nor his spouse is suited to the Foreign Service by background, appearance, attitude or behavior. I finally share in this consenses [sic] after a careful observation of two years. I do not believe it possible that this feeling is due to a collective prejudice.
This officer appears to have no particular positive distinguishing ability except probably his knowledge of certain languages. He appears to be particularly weak in industry, dependability and discretion.
*409 While be bas been working during tbe last year under tbe onus of Departmental marginal ratings, it does not finally appear that be bas been able to evaluate himself in the light of this reproof and to have objectively appreciated its significance. He appears to believe that certain individuals have been intolerant of him and have taken a dislike to him and that from this has stemmed all his difficulty. His difficulties, rather, appear to stem from a lack of refinement and good breeding, and an unusual ability to offend, probably without so intending.
B. Performance
Quality of work is characterized by lack of industry, inclination not to assume responsibility, and lack of concentration.
The reviewing officer’s comments and the comments by the review panel (three additional Foreign Service officers) were in no way detrimental to the plaintiff, except the statement by the reviewing officer that he concurred in the rating given.
21. The last efficiency report on the plaintiff’s performance was prepared at Rome by entirely different rating and reviewing officers. The overall rating given was 4. The narrative portion of the report was in general quite favorable to the plaintiff. The reviewing officer’s comments are quoted below:
Mr. Chwat arrived for duty at this post on October 29, 1958, and was immediately assigned to the second officer position in the Protection and Welfare Unit of the Embassy. He has had the close supervision and guidance of Miss Offie, the Chief of the Unit and rating officer. The relations between these two officers have been harmonious, and although there have been times when the Chief of the Unit has had to be firm in guiding the work of Mr. Chwat, he has taken the reproof good-naturedly and has made every effort to comply with the suggestions and advice.
I have had ample opportunity to watch this officer’s development, and find that he is one who wishes to leam rapidly and forge ahead in the Service. This has caused him to request me to assign him greater responsibilities without having first learned thoroughly the work of the Protection and Welfare Unit. He has been reminded that he must first learn the work where he is. *410 His approach, to his work has a tendency to be too superficial — and it has been emphasized more than once that he must gain a thorough knowledge of the work before he can move on to greater responsibilities.
Mr. Chwat, when first placed in this Unit, failed to realize that the old-time, experienced local employees are of inestimable value to the officer learning the work. There were moments when the local employees found it difficult to work with him, particularly when he wanted it known that he was a Vice Consul and that they were subordinates. In recent months, he has changed in this regard, and now finds that he can learn much from his colleagues and associates. There is little doubt but that he will develop into a good officer once the “vice-con-sulitis” has worn off, for he has many fine qualities, a burning ambition to get ahead in the Foreign Service, and willingness and cooperativeness.
The ratings are strict but justified. The over-all rating of 4 is proper.
22. The record does not show the names of the members of the Tenth Selection Board, the Eleventh Selection Board, Selection Board F of the Twelfth Selection Boards or Early Retirement Panel C for class 6. Nor is it shown in the record what was before any of the above named groups in their consideration of the plaintiff’s performance, except that it is clear that in each case, each group had plaintiff’s efficiency rating before it for consideration. It is also clear that the Eleventh Selection Board had, in addition to the efficiency reports, a report of Foreign Service Inspector Byrd relating to the plaintiff.
23. During the entire time the plaintiff was serving at his post in Stockholm, there was never any friction between him and his immediate superior, Mrs. Elvira Martin, the rating officer for each of the four efficiency reports on his performance of duty at that post.
24. Two witnesses and the plaintiff testified on his behalf. The testimony of one of these witnesses was directed toward some contact he had had with the plaintiff in his official capacity and also at certain social functions. Since neither contact was related in any way to the plaintiff’s selection-out, this testimony has been disregarded. The testimony of the plaintiff and that of his wife was directed towards re *411 butting as statements of fact various statements which had been included in the narrative reports accompanying the plaintiff’s efficiency reports. There was also testimony by the plaintiff, uncorroborated, that Mr. William P. Cochran, Jr., the Charge d’Affaires at the Embassy, personally disliked the plaintiff and that this dislike was manifested on a few occasions by Cochran’s ignoring the plaintiff at a few social functions, his impatience on one occasion upon being greeted at the airport by the plaintiff, and the like.
25. There is no probative evidence of any concerted action by employees of the Department of State to effect the selection-out of the plaintiff from the Foreign Service.
26. The plaintiff was neither granted nor entitled to a hearing on his selection-out by retirement from the Foreign Service.
CONCLUSION OF LAW
Based on the evidence, the pleadings and briefs of the parties, the court concludes as a matter of law that the defendant’s motion to dismiss the petition under Buie 67 (c) should be granted and the petition is dismissed.

 This was changes to class 8 by amendment of July 28, 1956, 70 Stat. 704.

 There had been a general change in the rating system of Foreign Service officers under which all those officers who had previously been classified as grade 5 became grade 6.