**Philip LINDSAY et al., Plaintiffs,**

**v.**

**Henry A. KISSINGER et al., Defendants.**

**Civ. A. No. 1312–73.**

United States District Court, District of Columbia.

Dec. 12, 1973.

George W. Miller, Hogan & Hartson, Washington, D. C., for plaintiffs.

Michael Katz, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

When officers appointed to the Foreign Service or to the United States Information Agency are found to have failed to meet minimum standards of performance they may be involuntarily retired for the good of the Service pursuant to the Foreign Service Act of 1946. Plaintiffs in this class action sue on behalf of approximately ten such officers still scheduled to be so "selected out" at the end of this year. It is claimed that the procedures and regulations of the Department of State under which such officers are chosen for separation are unduly vague and violate due process. This constitutional claim comes before the Court on the merits following extensive pretrial proceedings.[1] The controlling facts are not disputed and the decision hinges on essentially legal' considerations.

The principal claim advanced centers around plaintiffs' contention that officers facing separation under the selection out procedures are denied adequate notice and adequate opportunity to be heard in that they do not always re-receive adequate notice of the charges against them and may not call favorable witnesses, confront adverse witnesses or employ counsel.

Defendants have consented to the certification of plaintiffs' class for the purpose of challenging the current selection out regulations. Since the Court finds that plaintiffs can adequately represent the suggested class in an action for injunctive relief and that the other requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure are satisfied, certification will be granted.

Congress, by appropriate legislation, determined some time ago that officers, once appointed, should not have permanent tenure but rather should be competitively ranked to the end that those officers failing to maintain minimum standards might be weeded out to promote the overall efficiency of the services in which they serve. Selection out procedures responsive to this legislation have been in effect for more than twenty years and have been constantly refined and improved. There is every indication that the Department has been sensitive to its obligations and has sought to proceed with care. The plaintiffs do not object to a selection out system as such, but they vigorously assert that it is administered unfairly because an officer facing separation is denied those rights to adequate notice and hearing that are guaranteed by the United States Constitution and are essential to a fair and equitable determination of his ultimate status.

A brief review of the selection out procedures currently followed in the Foreign Service will delineate the setting in which these claims are asserted. These procedures are set forth in written precepts widely publicized throughout the Service and are virtually identical to those followed for officers ap-

---

1. Plaintiffs moved for a preliminary injunction. Defendants countered with a motion to dismiss and for partial summary judgment. Essential documents, many of them voluminous, were admitted and the parties filed extensive affidavits and memoranda of law. Following several status conferences, the Court suggested at a full hearing on the motions that Rule 65(a) of the Federal Rules of Civil Procedure appeared to warrant a joint submission on the merits by both parties without further testimony or hearing. The parties shortly thereafter filed additional materials and advised on the record that neither side desired to submit further proofs. Thus the case was finally submitted on December 10, 1973. The Department of State has agreed to defer separation of any member of the class until December 31, 1973, on the Court's assurance that the issue will be resolved by the Court before that date.

pointed to the United States Information Agency (USIA).[1a]

A Selection Board appointed each year annually reviews the performance of all Foreign Service Officers and ranks them. This is done to identify officers in the very bottom percentile of their classes and hence likely to be separated, as well as those in the top ranks of their grades to be considered eligible for promotion. These rankings are made on the basis of each officer's personnel file, which contains detailed periodic appraisals of his work by superiors. The Selection Board is specifically directed to designate for selection out those officers who fall within a specified low percentile in the rankings. The critical percentile varies from year-to-year, but is never greater than ten percent.

Those officers so designated are advised in writing that they are subject to forced "involuntary retirement" before the calendar year ends. This notice includes a statement of the deficiencies in performance relied on by the Selection Board as the basis for its decision. The notices vary somewhat in form and content, some being more factual and some more impressionistic than others.

An officer has complete access to his personnel file that was before the Selection Board. If he wishes to protest the decision, he may appear before a Special Review Panel, composed of a wholly different membership than the Selection Board, and offer mitigating information, including explanations and contravention of the facts specified in the selection out notice. The Special Review Panel may then recommend for or against selection out.[2]

Plaintiffs' constitutional challenge to the adequacy of this procedure revolves around four main contentions:

(1) The officer may not see all materials relating to his case that were considered by the Selection Board.

(2) The Selection Board's statement of reasons, as provided with the selection out notice, is too general and hence uninformative.

(3) The Selection Board's determination is made without adequate standards, complicating the officer's attempt to perform his job in compliance with such standards.

(4) The Special Review Panel does not allow supporting or adverse witnesses to be called and prohibits appearance of counsel.

Before discussing these objections in the light of the applicable decisions, it is pertinent to emphasize aspects of the selection out process bearing on the nature of the personnel judgments that must be exercised and the effects of the judgments made on the officers affected.

The Department has made a substantial effort to make known the qualities it desires in officers of different grades. General as these indications must be, considering the difficulty of expressing professional attributes, they are precise and clear. In short, a Foreign Service Officer well knows what is expected of him. Periodic evaluations of an officer's performance are made against these requirements. Superiors record with some considerable candor an officer's strengths and his observed deficiencies at a particular post. An officer may see the evaluation as soon as it is filed, and he may file a grievance with full rights of hearing whenever he believes an injustice has occurred. It is a fair inference from the materials in the record that although a conscientious effort is undoubtedly made to assure uniform and fair evaluations, an officer's evaluation may reflect his inability to

---

1a. Although Congress has provided that "Foreign Service information officers shall be separated and retired in accordance with [the Foreign Service Act of 1946]," 22 U.S.C. § 1228 (1970), the implementing regulations of the two agencies reveal minor differences in their selection out procedures. See, e. g., notes 2 and 4 infra.

2. In the USIA, this review procedure is performed by that agency's Retirement Board.

function under an assignment inconsistent with his experience and training, or personality conflicts with an unreasonable superior, or the evaluating officer's own lack of experience and understanding of an officer's responsibilities, etc. Moreover, in the nature of things, an officer has no way of knowing or comparing his periodic performance evaluations with that of colleagues in his class functioning under different assignments, at different locations under different supervisors. The Selection Board considers evaluations over a period of years, thus minimizing these differences, but in the nature of things, all unevenness cannot be eliminated and performance ratings are uneven. Thus, an officer may not fully realize his actual circumstances until he receives his notice of selection out from the Selection Board nor can he always know with any certainty what adverse or negative aspects in his many evaluations will be singled out to support the unfavorable ranking decision then made.

Yet to be ranked for selection out is no light matter. It threatens an involuntary separation. It carries a stigma and, to use the words of Justice Frankfurter, causes a "grievous loss" to the officer's professional standing. Joint Anti-Fascist Refugee Com. v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951). It is impossible to accept the Department's suggestion that it will not seriously impede transfer to civilian life.

Given these considerations, the Court is compelled to the conclusion that the limited hearing afforded before the Special Review Panel is constitutionally defective in a number of significant respects.

The Federal Courts have sought to avoid becoming involved in governmental personnel actions. The cases have placed primary emphasis upon the process by which personnel decisions are made rather than the result. Experience has shown that the greatest protection against mistake or arbitrary action is found in a hearing process that involves notice, the right to be heard and some form of confrontation with accusers. Such hearings involve time and inconvenience for busy administrators but they have come to be recognized as a constitutional necessity under circumstances such as these presented here.

■ It would be inappropriate for the Court to order a series of detailed rules for conduct of hearings before the Foreign Service Special Review Panel and the USIA Retirement Board. Rather, the Court will simply undertake to state certain minimum safeguards which the record indicates are essential under the circumstances of this case. It is clear that an officer is entitled to more than a general conclusory form of notice —he must, in addition, be advised of the facts on which the Selection Board's notice is based and he must, before the hearing, have full access to all materials concerning him that were considered by that Board. While no subpoena power is available, he should be given an opportunity to present favorable witnesses willing to appear in person or by affidavit. He must be allowed to interrogate adverse witnesses in person or by written interrogatories approved by the Selection Board. If he can retain counsel at his own expense, such counsel must be permitted to represent him at the review hearing. Experience will dictate methods for developing a fair hearing consistent with these rights without turning the process into an unduly formal adversary trial. The Board may, of course, impose strict rules of relevance and materiality and, obviously, any fact that has been the subject of a formal grievance hearing need not be reheard.

The State Department has offered no adequate justification for denying any of these procedural safeguards.[3] It has

---

3. Instead, it has consistently maintained that it is not constitutionally required to offer plaintiffs *any* form of hearing, citing Bd. of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). This reliance on *Roth* is misplaced, for nonprobationary Foreign Service and USIA officers have a clear expectation of continued employment

pointed to the availability of grievance procedures, but the selection out decision itself cannot be grieved, nor are these procedures guaranteed unless a grievance is filed promptly after the submission of a particular performance report. It is also urged that adverse witnesses cannot be called back from overseas duty without disruption of the Service. But not all such witnesses will be stationed abroad at the time of the hearing, and those that are can be required to answer interrogatories. No explanation is offered for the exclusion of counsel and supporting witnesses who are willing and able to appear. The fact of the matter appears to be that the Department is so confident in its own administrative judgments that it wants to discourage any true confrontation on the selection out issue, for it will not even pay an officer's passage back to Washington if he asks for an appearance before the Special Review Panel.[4]

■ This minimization of forced separation is impermissible, given the standards the Supreme Court has established for discharge from government service.[5] See Bd. of Regents v. Roth, 408 U.S. 564, 576–577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Slochower v. Bd. of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Wieman v. Updegraff, 344 U.S. 183, 192, 73 S.Ct. 215, 97 L.Ed. 216 (1952). Cf. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970). Of course, a full adversary hearing is not required if the circumstances of the particular case dictate otherwise, for the Court must determine the appropriate procedural safeguards by balancing inconvenience, expense and proper government objectives against the rights of the individuals affected.

Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). But in the instant case, as discussed above, the Department has failed to offer any substantial reason for refusing to provide the procedures sought by plaintiffs. Given the seriousness of the selection out sanction, the relatively few individuals involved, and the imperfect, somewhat impressionistic data on which the Selection Boards must rely, the objective of the Department in eliminating marginal officers will not be unduly impeded by providing a more adequate hearing. This will assure the essential fairness which the Constitution requires and will perhaps, in the long run, result in better informal judgments in particular cases. At the same time, the laudable and necessary procedure for weeding out marginal officers in the interests of efficient and effective competitive foreign service agencies will be preserved as Congress wisely desired.

■ On the other hand, the Court finds no ground for plaintiffs' effort to require a greater specificity of standards for determining who will be selected out. These have already been adequately defined. The matter cannot be reduced further to a mathematical precision. Professional competence is not susceptible to such treatment. Moreover, there is nothing in the Foreign Service Act of 1946 or the Constitution which prevents budgetary considerations from affecting the particular selection out percentiles. Full and fair hearing is all that is required.

As to the individual cases of Lindsay, Starbuck and Foo, the file is voluminous. Each of these officers has been

---

absent an official finding of inadequate performance, and would, in addition, be significantly harmed by the stigma of involuntary retirement. Compare Roth at 573, 578, 92 S.Ct. 2701.

4. Such compensation is, however, offered to USIA officers desiring to appear before the Retirement Board. No explanation whatever is given for this distinction.

5. This conclusion is strongly supported by a decision of the United States Court of Appeals for the District of Columbia Circuit, released shortly after the preparation of this Memorandum Opinion, in which that Court stressed the importance of an adequate hearing prior to separation from Government service. Thompson v. Washington, No. 71–2049 (D.C.Cir. Dec. 10, 1973).

contesting separation out for some time. As a result of discovery in this case, new materials have been made available to each of them and they, in turn, tendered responses bearing on the data disclosed. At no time has any of them yet had a hearing of the nature the Court has indicated above should be afforded before separation. Accordingly, none of them can be legally separated without another hearing. There is no ground for repeating submissions already made by the officers, but they should be afforded a final hearing before disposition of their cases to cover new data and to present witnesses, where appropriate. This can be accomplished rapidly. If a final administrative determination is made to separate any of them, no further remedy will be afforded them in this proceeding, which will terminate as to their claims by remand for appropriate hearings.

The foregoing shall constitute the Court's findings of fact and conclusions of law, which are set forth formally in the attached Order.

### ORDER

It appearing to the Court that plaintiffs, as a class, are entitled to a declaratory judgment and an injunction for reasons stated in the Court's Memorandum Opinion filed this date,

Now therefore the court declares:

That defendants' regulations and procedures now in force governing the selection out for inadequate performance of officers appointed in the Foreign Service or the United States Information Agency are constitutionally defective in that they deny all officers in the class here certified an adequate hearing comporting with the requirements of due process under the Fifth Amendment, and

It is accordingly ordered:

That no officer appointed to the Foreign Service or the United States Information Agency, including the named plaintiffs, who has been notified that he is to be separated from either of such services in 1973 by reason of the selection out regulations and procedures in force in such agencies shall be separated from either of such services unless and until a hearing before the Special Review Panel or Retirement Board is held, on adequate notice, and the officer facing separation has been afforded a right to appear before such Panel or Board in person at Government expense, to be represented by an attorney if retained by such officer, to present relevant and material factual information through witnesses willing to appear in person or by affidavit on his behalf, and such officer has been afforded reasonable opportunity at such hearing to confront in person or by written interrogatories any person then employed by the Department of State who has submitted adverse information not previously considered in a grievance hearing where such information is relied on by the Selection Board in rating such officer; provided, however, that no hearing shall be required unless the officer shall request such a hearing, in writing, within two weeks from the date of this Order, and it is further

Ordered that judgment shall be entered in favor of the defendants with respect to all other issues raised in this proceeding; provided, however, that nothing herein shall affect the right of plaintiff Cole to challenge, by a separate action, his classification following the decision to retain him in the Foreign Service.