**Peter W. COLM et al., Plaintiffs**

v.

**Henry KISSINGER, Defendant.**

**Civ. A. No. 74–1371.**

United States District Court, District of· Columbia.

Dec. 17, 1975.

Murray J. Belman, Washington, D. C., for plaintiffs.

Ann D. DuRoss, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM

GASCH, District Judge.

In this action, two former Foreign Service officers challenge their involuntary retirements from the Service. The plaintiffs, Peter Colm and John McIntyre, were selected out of the Foreign Service when they failed to be promoted within the period of time then prescribed by State Department regulations for officers of their class. They allege that the personnel files relied upon by the selection boards determining whether they would be promoted contained adverse and improper material to which they were denied access and to which, therefore, they could not respond. This procedure, they claim, has deprived them of property without due process of law in violation of the Fifth Amendment of the Constitution. Plaintiffs seek: (1) a declaratory judgment that their involuntary retirements were contrary to law; (2) reinstatement in the Foreign Service; and (3) an impartial administrative hearing to determine the propriety of their involuntary retirements.

The defendant, the Secretary of State, interposes the equitable defense of laches and alternatively argues on the merits that plaintiffs were not denied due process of law, because they were not deprived of any property interest. Before the Court at this stage of the litigation is plaintiffs' motion for summary judgment and defendant's motion to dismiss or in the alternative for summary judgment. On the basis of the pleadings, memoranda, affidavits, exhibits and oral argument of the parties, and for the reasons to be outlined in this Memorandum, the Court finds that on the merits the defendant is entitled to summary judgment.[1]

### Background

The Foreign Service Act of 1946, as amended,[2] provides for selection-out of the Service on time-in-class grounds and on substandard performance grounds:

> Sec. 633(a). The Secretary shall prescribe regulations concerning—
>
> (1) the maximum period during which any Foreign Service officer below the class of career minister shall be permitted to remain in class without promotion; and
>
> (2) the standard of performance which any such officer must maintain to remain in the Service.
>
> (b) Any Foreign Service officer below the class of career minister who does not receive a promotion to a higher class within the specified period or who fails to meet the standard of performance required of officers of his class shall be retired from the Service and receive benefits in accordance with the provisions of section 634 [22 U.S.C. § 1004] of this title.[3]

The selection-out for time-in-class, § 633(a)(1) of the Act[4] is in essence an "up or out" system. Either the Foreign Service officer is promoted to the next class within the specified time period or he is involuntarily retired. The Congressional purpose behind this system is to develop an "elite corps" of men and women capable of serving at the highest levels of the Foreign Service. An officer who has reached his highest level of performance in the middle grades does not belong in this group. When it is determined that he is unable to further develop or assume greater responsibilities, there is no place for the officer in the Service. His separation is accomplished by the "promotion-up or selection-out" system.[5]

Plaintiff Colm entered the Foreign Service on September 19, 1960, as a Class 4 officer. Plaintiff McIntyre entered as a Class 6 officer on August 14, 1955, was promoted to Class 5 on January 29, 1957, and to Class 4 on April 7, 1962. The

---

1. As the matter is being disposed of on the merits, the Court will not address itself to the laches issue.

2. 22 U.S.C. § 801 *et seq.* (1970).

3. *Id.* at § 1003.

4. *Id.* at § 1003(a)(1).

5. *See* H.R.Rep.No.2508, 79th Cong., 2d Sess. 1–8 (1946).

maximum time-in-class for Class 4 officers was eight years during plaintiffs' service. Not having been promoted in that time, Colm was involuntarily retired on September 20, 1968, and McIntyre on November 15, 1970.

Promotion of Foreign Service officer is determined by his comparative ranking against all other officers in his class. The performance of each Foreign Service officer is evaluated annually by his supervisors according to precise and clear criteria established by the Department of State and generally made known to the members of the Foreign Service.[6] These reports plus other documentation relating to an officer's performance constitute his "performance file." In accordance with the Foreign Service Act, § 623,[7] Selection Boards are convened annually to review each officer's performance file and to rank that officer in comparison with his peers on the basis of relative merit.

It is the administrative management of the Department of State, however, that determines the number of officers in each class to be promoted. When compiling rank-order lists of officers, the Selection Boards do not know the cut-off point above which all officers so ranked will be nominated for promotion.

The fact, then, that an officer is selected out on time-in-class grounds does not mean that his performance has been unsatisfactory, nor even that it has not been above average. Rather, it reflects the fact that during the years in his class other officers were deemed to have had better performance records.

Section 633 of the statute also provides for selection-out for substandard performance.[8] Foreign Service officers who are ranked in the bottom percentages of their class are involuntarily retired. Plaintiffs were *not* separated pursuant to this provision. In the case of *Lindsay v. Kissinger*,[9] it was held that certain procedural safeguards must be afforded in substandard performance selection-out proceedings. These included the right to a hearing upon adequate notice, to be represented by a retained attorney, to appear personally at Government expense, to present witnesses, and to confront persons within the State Department who have submitted adverse materials to the officer's performance file.[10] The *Lindsay* plaintiffs were Foreign Service officers at the time their suit was filed. In the subsequent case of *Bergstrom v. Kissinger*,[11] the same court held that the *Lindsay* holding would not be retroactively applied to *former* Foreign Service officers who had been involuntarily retired under the substandard performance selection-out procedures *prior* to the *Lindsay* decision.[12]

There is one other section of the Foreign Service Act which provides for separation of officers from the Service. Section 637(a) provides for separation of an officer "on account of the unsatisfactory performance of his duties, or for such other cause as will promote the efficiency of the Service . . . ."[13] The section requires that such an officer be given written reasons for his separation and be afforded a hearing at which

---

6. See *Lindsay v. Kissinger,* 367 F.Supp. 949, 952 (D.D.C.1973).

7. 22 U.S.C. § 993 (1970).

8. *Id.* at § 1003(a)(2) and (b).

9. 367 F.Supp. 949 (D.D.C.1973).

10. *Id.* at 955.

11. 387 F.Supp. 794 (D.D.C.1974), *appeal docketed,* No. 75–1222, D.C.Cir., March 3, 1975.

12. The Court in *Bergstrom* held that the records of the discharges of these officers were stale and that it would be difficult for a presently constituted Review Board to reconstruct the decision-making process of the prior Selection Boards which had low-ranked the *Bergstrom* plaintiffs. The Court also found that retroactive relief for the named plaintiffs would require the State Department to reopen the cases of all former Foreign Service officers similarly situated who so requested. This, the Court found, would be unduly burdensome.

13. 22 U.S.C. § 1007(a) (1970).

his unsatisfactory performance or other cause for separation must be established.

### Plaintiffs' Due Process Argument

Plaintiffs were never allowed to see certain confidential portions of their efficiency reports. Therefore they were not even aware of the adverse comments in their files which they allege severely impaired their promotion possibilities. Even had they been aware of these materials, there was little they could do to rebut them under the existing State Department regulations.[14] Their only response would have been to submit a simple rebuttal which would have been placed in their personnel files. It is asserted by plaintiffs that such action would have worked to the prejudice of their careers even more, because their superiors would have deemed them not to be "team players" and to be "rocking the boat." There was no opportunity to mount any challenge to these comments before an impartial tribunal.

The selection-out of plaintiffs under such circumstances, it is alleged, violates plaintiffs' rights to procedural due process. Plaintiffs assert that it is now settled law that before an individual may be dismissed from public employment, he is entitled to a hearing process at least informing him of the grounds for dismissal and giving him an opportunity to challenge those grounds.[15] Plaintiffs state that they had a reasonable expectation that they would be able to continue in the Foreign Service until they reached the mandatory retirement age.[16] They acknowledge that a Foreign Service officer's appointment is subject to earlier termination for cause, for substandard performance, or for failure to be promoted. In the case of selection-out for cause, the Foreign Service Act itself requires a hearing.[17] In the case of selection-out for substandard performance, the *Lindsay* case requires that a hearing be given. Thus plaintiffs argue selection-out for failure to be promoted, which cuts short the same expectation of continued employment as the other two selection-out procedures, must also be accompanied by a due process hearing.

The defendant does not dispute, and indeed even acknowledges, that plaintiffs have been denied a "due process" hearing. The issue, then, is whether plaintiffs were deprived of a "property interest" in their continued employment. The Court concludes that they had no such property interest in the constitutional sense and they were therefore not entitled to a due process hearing before their employment was terminated.

Several cases decided by the Court of Claims in the 1960's indicated that government employees [both Foreign Service and military officers] in a system of selection-out for reasons other than cause were not entitled to the due process protections of a hearing. Thus in *Chwat v. United States*,[18] the Court of Claims distinguished between the provisions of § 637(a) of the Foreign Service Act[19] providing for separation for cause and requiring a hearing, and § 633(a),[20] providing for selection-out for substandard performance and making no mention of a hearing. Where Congress had expressly provided for a hearing in one

---

14. The present State Department regulations require that Foreign Service officers be given full access to their performance files and an opportunity to challenge adverse comments before an impartial grievance board.

15. Plaintiffs cite for this proposition *Perry v. Sindermann*, 408 U.S. 593, 603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Slochower v. Board of Higher Education*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952).

16. Section 632 of the Foreign Service Act of 1946, as amended, provides that a Foreign Service officer who has not attained the rank of career ambassador or career minister shall be retired at age sixty, with provision for an extension of service of up to five years. 22 U.S.C. § 1002 (1970).

17. 22 U.S.C. § 1007(a) (1970).

18. 175 Ct.Cl. 392 (1966).

19. 22 U.S.C. § 1007(a); *see* text accompanying note 13 *supra*.

20. 22 U.S.C. § 1003(a); *see* text accompanying note 8 *supra*.

situation, the court would not implicitly provide for it in the other.[21]

▉ These cases, of course, were decided before the recent expansion of the role of procedural due process in public employment cases. At one time due process was required only when the state deprived a person of a right. Government employment, characterized as a privilege, was not entitled to due process protection.[22] The Supreme Court has since rejected the "right-privilege" distinction.[23] The Court has not, however, gone so far as to require due process protection whenever the State acts to the detriment of an individual. In *Board of Regents v. Roth*,[24] the Court held that it would not require procedural due process unless the interest at stake could be characterized as liberty or property. If such an interest is found, then the Court must additionally balance the competing interests at stake to determine the specific procedural safeguards required.[25] In determining whether the benefit involved is a property interest in the constitutional sense, it must be found that the individual had a "legitimate claim of entitlement":

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .
>
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.[26]

In the companion case of *Perry v. Sindermann*,[27] the Court further expounded on the *Roth* standards:

> A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.[28]

Thus in *Roth* the Court held that the state employee was not entitled to a hearing. His interest in employment was created by the terms of his appointment which ran to a date certain with absolutely no provision as to re-employment. In *Perry* the Court reached the opposite result where it found that the policies and practices of the institution which employed the individual had creat-

---

**21.** 175 Ct.Cl. at 396–398. *See also Norman v. United States,* 392 F.2d 255, 264, 183 Ct.Cl. 41 (1968), *cert. denied,* 393 U.S. 1018, 89 S.Ct. 622, 21 L.Ed.2d 562 (1969) (the Court of Claims drew this same distinction in the military promotion-up or selection-out context, and held that there was no right to a hearing); *Alexander v. United States,* 148 Ct.Cl. 24 (1960).

**22.** *See Bailey v. Richardson,* 86 U.S.App.D.C. 248, 182 F.2d 46 (1950), *aff'd by an equally divided Court,* 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 (1951).

**23.** *See Board of Regents v. Roth,* 408 U.S. 564, 571 n. 9, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

**24.** 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

**25.** *Id.* at 569–571, 92 S.Ct. at 2701. The Court stated:

> [A] weighing process has long been a part of any determination of the *form* of hearing required in particular situations by procedural due process. But, to determine whether due process requirements apply in the first place, we must look not to the "weight" but to the *nature* of the interest at stake. . . We must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property. (footnote omitted).
> *Id.* at 570–571, 92 S.Ct. at 2705.

**26.** *Id.* at 577, 92 S.Ct. at 2709. Thus the *Roth* Court held that the welfare recipients in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), had a right to a hearing as to their eligibility for welfare benefits, where their entitlement to such benefits was grounded in the statute defining eligibility.

**27.** 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

**28.** *Id.* at 601, 92 S.Ct. at 2699.

ed a "formal understanding" of continued employment.

▮ In the case at bar the situation is akin to that in *Roth*. The only "legitimate claim of entitlement" plaintiffs had to continued employment in the Foreign Service was employment for the maximum time-in-class. All Foreign Service officers were informed of the statutory requirement of the "promotion-up or selection-out" system. They knew that if they were not promoted to the next higher class within the relevant time period their appointment would end on a date certain. Such were the "mutually explicit understandings" of the parties.

The recent Supreme Court case of *Arnett v. Kennedy*[29] adds some dimension, if not clarification, to this discussion. In *Arnett* the Court held that the removal for cause of a nonprobationary Civil Service employee need not be preceded by a trial-type hearing. The three-Justice plurality found that government employees are entitled only to the procedural protections provided by the statute which created their expectancy of continued employment.[30] Such a holding would appear to foreclose plaintiffs' claims. Their expectancy of continued employment was created by the Foreign Service Act and the procedural protections in that statute do not provide for a hearing when an officer is selected-out for failure to be promoted.

Six of the Justices in *Arnett,* however, took a position that might be deemed to support plaintiffs' claims. They held that federal civil servants have a "property right" in their employment, which is protected by the Fifth Amendment. It must be remembered, however, that this case involved removal *for cause.* The public employee in *Arnett* had an expectation under the relevant statute of con-

tinued employment absent termination for cause. As Justice Powell indicated in his concurring opinion [joined in by Justice Blackmun], the Congress can constitutionally refuse to confer a "property interest" in federal employment:

> No property interest would be conferred, for example, where the applicable statutory or contractual terms, either expressly or by implication, did not provide for continued employment absent "cause."[31]

In the Foreign Service Act, Congress determined that it would *not* provide for continued employment absent "cause". Rather the statute provides for the involuntary retirement of Foreign Service officers on time-in-class grounds not involving "cause". The separation for cause provision in the Foreign Service Act is in a separate section of the statute[32] and it does provide the requisite procedural safeguards.

▮ It was argued by plaintiffs that since the *Lindsay* case held Foreign Service officers to be entitled to due process protections in substandard performance selection-out (a provision also distinct from the separation for cause section), they are equally entitled to such procedures before they are retired on time-in-class grounds. They argue, in other words, why should there not be procedural protection for selection-out under Section 633(a)(1) and (b) of the Act when *Lindsay* grants such protection for selections-out under Section 633(a)(2) and (b). It is not for this Court to comment on the wisdom of the decision in *Lindsay*. Suffice it to say that there are some critical distinctions to be drawn between that case and the one before this Court. The *Lindsay* court found that the property interest of Foreign Service officers was one of an expectancy of

---

**29.** 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

**30.** The Lloyd-LaFollette Act of 1913, 5 U.S.C. § 7501 (1970), provides that the civil servant whose removal is sought shall be given notice thereof, be provided with a copy of the charges preferred against him, and be allowed to respond in writing and to submit affidavits.

There is no right to a trial or hearing, or examination of witnesses. The Civil Service Commission regulations provide for a post-termination hearing.

**31.** 416 U.S. at 167 n. 2, 94 S.Ct. at 1650.

**32.** 22 U.S.C. § 1007(a); *see* text accompanying note 13 *supra.*

continued employment within the time-in-class period absent a finding of substandard performance. This Court is not disposed to broaden the scope of this expectancy. All Foreign Service officers were well informed of the statutory requirements of the time-in-class system. They cannot be heard now to claim greater expectations. If they had such, they were not based on "mutually explicit understandings." [33] Furthermore, in *Lindsay* the court found that a stigma attached from an official finding of inadequate performance. There is no stigma of constitutional proportion attached to selection-out for failure to be promoted. The "up or out" system is quasi-automatic; it does not involve the affirmative action of a permanent personnel administration. [34] Rather than attaching a stigma, it is a system which promotes "the best of the best qualified." [35]

The Court finds, therefore, that plaintiffs were not deprived of any property interest they had as to their continued employment in the Foreign Service. This being the case, the due process requirements of the Constitution have not been violated.

■ Even were the Court to determine today that such a "property interest" existed, the Court would then have to consider the second requirement of the *Roth* case. This requires the Court to balance the competing interests of the individual and of the government to determine the exact nature of the procedural safeguards to be afforded. [36] In this regard, the fact that plaintiffs are no longer in the Foreign Service, and indeed have been retired since 1968 and 1970, plays a major role. The Court has indicated above that it is not inclined to dispose of this action on the basis of the laches defense. [37] Nevertheless, the passage of time would have a profound effect upon any relief that the Court could fashion in this case. Considering the nature of the Selection Board system, it would be unduly burdensome, if not nearly impossible to reopen the plaintiffs' cases. Selection Boards sit for only one year. Members are drawn from the Department of State, other government agencies and from the public. It would be impossible to reconstitute the Boards for each year involved. The weighing process used in ranking officers considers a multitude of factors. To determine just how much weight was given to the alleged adverse comments in plaintiffs' files and how this affected their rankings against the other officers in their class would be impossible. Finally to require such procedures in plaintiffs' cases would require the Service to afford the same procedures to all officers involuntarily retired on time-in-class grounds in the past. To require this would be unduly burdensome. It was just such a consideration of factors in *Bergstrom v. Kissinger* [38] that led the court there to deny retroactive application of the *Lindsay* decision. The Court feels that these factors would also preclude any form of relief in this case, were it appropriate.

## ORDER

Upon consideration of the Court's Memorandum issued this day, it is this 17th day of December, 1975,

Ordered that plaintiffs' motion for summary judgment be, and hereby is, denied; and it is further

Ordered that defendant's motion for summary judgment be, and hereby is, granted.

---

33. *See* text accompanying note 28 *supra*.

34. H.R.Rep.No.2508, 79th Cong., 2d Sess. 88 (1946).

35. *Norman v. United States*, 392 F.2d 255, 264, 183 Ct.Cl. 41 (1968), *cert. denied*, 393 U.S. 1018, 89 S.Ct. 622, 21 L.Ed.2d 562 (1969).

36. *See* note 25 *supra* and accompanying text.

37. *See* note 1 *supra*.

38. 387 F.Supp. 794 (D.D.C.1974), *appeal docketed*, No. 75–1222, D.C.Cir., March 3, 1975; *see* note 12 *supra*.