Peter W. COLM and John M. McIntyre, Appellants,

v.

Cyrus R. VANCE, Secretary of State, U. S. Department of State.

No. 76–1252.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 28, 1977.

Decided Nov. 18, 1977.

Murray J. Belman, Washington, D. C., for appellants.

Neil A. Kaplan, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease, and Ann S. DuRoss, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Richard B. Finn, Chicago, Ill., filed a brief on behalf of the American Foreign Service Ass'n as amicus curiae urging reversal.

Suellen T. Keiner, Washington, D. C., filed a brief on behalf of the American Federation of Government Employees, AFL–CIO, as amicus curiae urging reversal.

Before TAMM, ROBINSON and ROBB, Circuit Judges.

Opinion for the court filed by TAMM, Circuit Judge.

Opinion filed by ROBB, Circuit Judge, concurring in the remand.

TAMM, Circuit Judge:

Section 633 of the Foreign Service Act of 1946, as amended, provides for the "selection-out" of Foreign Service officers who fail to be promoted to the next higher grade within a period of years prescribed from time to time by the Secretary of State. This provision, central to the constitutional issue raised on this appeal, reads in relevant part as follows:

> (a) The Secretary shall prescribe regulations concerning—
>
> (1) the maximum period during which any Foreign Service officer below the class of career minister shall be permitted to remain in class without promotion . . . .
>
> * * * * * *
>
> (b) Any Foreign Service officer below the class of career minister who does not receive a promotion to a higher class within the specified period . . . shall be retired from the Service and receive benefits in accordance with the provisions of section 1004 of this title.

22 U.S.C. § 1003 (1970). Our appellants herein, two Foreign Service officers who were retired pursuant to this statutory "up-or-out" requirement, argue that their involuntary retirements contravened the procedural due process guarantee of the Constitution's fifth amendment in that neither of them was afforded a hearing before an impartial tribunal to challenge certain adverse comments contained in confidential portions of their personnel files.

The factual background to this litigation is adequately portrayed in the district court's memorandum opinion, reported below *sub nom. Colm v. Kissinger,* 406 F.Supp. 1250 (D.D.C.1975), and we need not repeat it here. For present purposes we need only note that the district court granted the Department of State's motion for summary judgment on the ground that, since neither appellant had a legitimate claim of entitlement to continued employment in the Foreign Service beyond the maximum time-in-class then applicable (having remained in the Department's employ to the end of that period), any constitutionally protected property interest in their government employment necessary to require due process protections had expired. *See id.* at 1255–56. We would agree with Judge Gasch's articulate analysis of the property interest claims in this case and accordingly affirm his decision if it were not for our discovery of certain germane provisions of title 22 of the *United States Code* that make such a course impossible at this point and require us to vacate the award of summary judgment and to remand the case for further proceedings.

## I

In this appeal we must decide whether appellants had a property interest such that their selection-out for non-promotion had to comport with some degree of procedural due process.[1]

A person's job under certain circumstances is indeed conceived of as his property in our prevailing jurisprudence and therefore cannot be taken away by the government without due process of law. *See* U.S.Const. amend. V; *id.* amend. XIV, § 1. The usual due process analysis, familiar at least since *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), has been two-staged: identifying the exist-

---

1. The Supreme Court in this decade has recognized an increasing number of interests, conceived of as "property", as enjoying procedural due process protection under either the fifth or fourteenth amendments. *See, e. g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (public education); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (public employment); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (summary seizure of household goods upon ex parte application for a prejudg- ment writ of replevin); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (cancellation of driver's license); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (cancellation of welfare payments); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (garnishment of wages). Yet the Court also has emphasized that "the range of interests protected by procedural due process is not infinite." *Board of Regents v. Roth,* 408 U.S. 564, 570, 92 S.Ct. at 2705 (1972).

ence of a constitutionally protected property or liberty interest and then assessing the appropriate measure of procedural protection due. *See, e. g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *cf. Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (protected liberty interest in parole revocation). If the aggrieved party is determined to have no protected property interest (*e. g.,* job tenure) or in liberty (stemming from the circumstances surrounding the termination of employment), due process itself does not apply, and the party is left with only those procedural protections established by or otherwise binding upon the employing agency. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Our consideration of the property interest claim in the instant case must begin with the landmark companion cases of *Roth* and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), in which the Supreme Court reviewed the procedural due process claims of two state employees who had not been discharged during their contract periods, but rather had not had their employment contracts renewed for a subsequent term. In *Roth,* the Court held that a state university professor had no property interest in continued employment when he had been hired only for a fixed term of one academic year, had no formal tenure, and could point to nothing in state law or in his employment contract which might otherwise explicitly or implicitly entitle him to contract renewal. In so holding, the Court explained that a property interest sufficient to trigger due process protection may be created by statute, contract, or less formal "understandings", but that something more objectifiable than a sanguine expectation is necessary.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is the purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577, 92 S.Ct. at 2709.

■ This judicial recognition that a protected property interest in one's job may have its source in something less formal than a statute or contract was further refined in *Perry,* where the Court held that proof of a teacher's allegations that he was entitled to tenure under an informal de facto tenure system fostered by the college in a faculty guide and other official guidelines would establish a property interest of which he could not be deprived without due process. 408 U.S. at 600–03, 92 S.Ct. 2694. Thus, *Perry* is especially pertinent to appellants' property claims in that it demonstrates that the source of a protected property right might be implicit in the overall workings of a particular government employer. *Cf. Morrissey v. Brewer,* 408 U.S. at 479, 481–82, 92 S.Ct. 2593 (liberty "[i]mplicit in the system's concern with parole violations . . . ."); *Geneva Towers Tenants Organization v. Federated Mortgage Investors,* 504 F.2d 483, 489–90 (9th Cir. 1974) (property interest in continued benefits of low-cost housing). It emphasized that

> absence of such an explicit contractual provision may not always foreclose the possibility that a teacher has a "property" interest in re-employment.
>
> \* \* \* \* \* \*
>
> A teacher, like the respondent, who has held his position for a number of years, might be able to show from the circum-

stances of this service—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure. Just as this Court has found there to be a "common law of a particular industry or of a particular plant" that may supplement a collective-bargaining agreement [citation omitted], so there may be an unwritten "common law" in a particular university that certain employees shall have the equivalent of tenure.

\*　\*　\*　\*　\*　\*

We disagree with the Court of Appeals insofar as it held that a mere subjective "expectancy" is protected by procedural due process, but we agree that the respondent must be given an opportunity to prove the legitimacy of his claim of such entitlement in light of "the policies and practices of the institution." [Citation omitted] Proof of such a property interest would not, of course, entitle him to reinstatement. But such proof would obligate . . . officials to grant a hearing at his request, where he could be informed of the grounds for his nonretention and challenge their sufficiency.

408 U.S. at 601–03, 92 S.Ct. at 2699–2700.

■ The district court in our present case concluded, and we agree, that a legitimate claim of entitlement must derive from some reasonably identifiable source apart from the mere expectancy or desire of the claimant. *See Sims v. Fox,* 505 F.2d 857, 861–62

(5th Cir. 1974) (en banc), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975). "It is simply our job to identify the choice that . . . [was] made, and to respect that decision." *Adams v. Walker,* 492 F.2d 1003, 1009 (7th Cir. 1974) (Stevens, J., concurring); *see Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

## II

■ This case, as not infrequently occurs,[2] has refined its focus as the litigation has progressed. Somewhere between the time appellants filed their main brief and their reply brief with this court, they reduced the thrust of their challenge to the "simple question whether a Foreign Service Officer is entitled to a fair opportunity to be promoted during his allotted time-in-class. . . . [This would] includ[e] the right to see the contents of his performance file and to object to any erroneous or biased comments made therein." Reply Brief for Appellants at 1. Thus, appellants no longer claim that they had a legitimate claim of entitlement to continued employment, *see* Brief for Appellants at 17–21, but rather urge us to find that the term-limited property interest they most assuredly did have throughout the time-in-class period[3] included not only that quantitative aspect but a qualitative one as well which entitled them

---

**2.** *See, e. g., Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

**3.** Foreign Service officers do not serve "at the pleasure" of anyone, *compare Mazaleski v. Treusdell,* 183 U.S.App.D.C. 182, 190–191, 562 F.2d 701 at 709–710 n.23 (1977); rather, they may be separated only for cause, 22 U.S.C. § 1007 (1970), for having been "low-ranked" vis-a-vis their peers, *id.* § 1003, or for time-in-class. *Id.* Officers separated for cause have a statutory right to a hearing, *id.* § 1007(a), and may have other procedural rights as well. *See Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Moreover, officers who are separated for low ranking are entitled to due process protection in connection with this adverse personnel action. *Lindsay v. Kissinger,* 367 F.Supp. 949 (D.D.C.1973). In both cases, the reason why the officer facing separation proceedings enjoys at least some degree of due process protection is that he or she has a protected property interest in—a legitimate claim of entitlement to—a term of employment limited only by the right of the Secretary of State to determine its duration for all within-class officers. Thus, we agree with appellants' statement that "[s]imply because one may not be entitled to indefinite employment does not mean he has no property interest in his job *during* the term he does enjoy." Reply Brief for Appellant at 3. This is not their case, however. Their situation is quite a different matter, because they have remained employed throughout the then specified term, rather than being separated prematurely, as would be the case of an officer separated out for "cause" under section 1007 or for "low ranking" under section 1003.

to a fair opportunity to achieve promotion.[4] We may have come a long way since our decision in *Bailey v. Richardson*,[5] 86 U.S. App.D.C. 248, 182 F.2d 46 (1950), *aff'd by an equally divided court*, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 (1951), but we are not yet ready to accept this invitation to travel further down the way of constitutionalizing every manner of government personnel decision.

■■■ As a general matter, of course, a government employee has no property entitlement to a promotion and therefore lacks any constitutional basis for requiring some kind of hearing upon a nonpromotion decision. *See Schwartz v. Thompson*, 497 F.2d 430, 432 (2d Cir. 1974). *But cf. Bottcher v. Department of Agriculture & Consumer Services*, 361 F.Supp. 1123, 1129 (N.D. Fla.1973), *aff'd mem.*, 503 F.2d 1401 (5th Cir. 1974) (letters in personnel file impinge protected property interest by foreclosing or diminishing opportunities for promotion). There may, however, be situations where such an entitlement would exist as where "a promotion would be virtually a matter of right—for example, where it was solely a function of seniority or tied to other objec-

tive criteria . . .," or where there is a "common law" of promotion sufficient to create a de facto "right" to promotion.[6] *Schwartz v. Thompson*, 497 F.2d at 433. *See also Koscherak v. Schmeller*, 363 F.Supp. 932, 935–36 (S.D.N.Y.1973) (three-judge court), *aff'd mem.*, 415 U.S. 943, 94 S.Ct. 1462, 39 L.Ed.2d 560 (1974); *Olson v. Trustees of California State Universities*, 351 F.Supp. 430, 433–35 (C.D.Cal.1972). What sets our present case apart from these other reported nonpromotion cases is that continuing nonpromotion throughout the prevailing time-in-class period eventuates in termination of employment under the up-or-out system rather than simply in continuing employment in the same grade.

■■■ Still, there is no such thing as a federal constitutional common law of property interests, *see Bishop v. Wood*, 426 U.S. 341, 349–50 n. 14, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), and we are scarcely inclined to fashion one, *see generally* Monaghan, *The Supreme Court, 1974 Term—Forward: Constitutional Common Law*, 89 Harv.L. Rev. 1, 44–45 (1975), much less to constitutionalize the "fairness" of promotion decisions.[7] In determining whether appellants

---

**4.** Contrary to the government's assertion, Brief and Appendix for Appellee at 21 n. 8, we are satisfied that this particular issue was properly raised below, Complaint ¶¶ 9–10; J.A. 3, and, indeed, the district court appears to have expressly considered and rejected the claim in stating that it was not disposed to broaden the scope of appellants' term-limited expectancy. 406 F.Supp. at 1256.

**5.** "It has been held repeatedly and consistently that Government employ is not property . . . . [T]he due process clause does not apply to the holding of a Government office." *Bailey v. Richardson*, 182 F.2d at 57.

**6.** Neither longevity nor procedural prerequisites to a valid separation alone necessarily creates a protected property interest in one's employment. *See Cusumano v. Ratchford*, 507 F.2d 980 (8th Cir. 1974), *cert. denied*, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975); *McNeill v. Butz*, 480 F.2d 314, 320–21 (4th Cir. 1973). And a fortiori, neither generally would suffice to establish a legitimate claim of entitlement to a promotion. Under certain circumstances, a "common law" of promotion might be established by reference to historical promotion patterns. *Cf. Board of Regents v. Roth*, 408 U.S. at 578 n. 16, 92 S.Ct. 2701; *Stretten v. Wads-*

*worth Veterans Hosp.*, 537 F.2d 361, 367 (9th Cir. 1976) (common law of reemployment). Appellants do assert at one point that selection-out was "not a significant threat" when they entered the Foreign Service, since, "[f]or example, between the years 1960, when Mr. Colm entered the Service and 1967, when the last Selection Board considered him for promotion, only 16 officers were selected out for time-in-class—an average of two per year." Brief for Appellants at 18. Though they have never directly raised this particular claim, we pause to note that this falls rather short of establishing a "common law" of promotion sufficient to create a legitimate claim of entitlement to it.

**7.** One can well imagine the potential claims that such a holding might inspire. What, for instance, would the court make of a claim that one had been deprived of his constitutionally protected "fair" opportunity for promotion because he or she had been assigned to Zanzibar rather than to Paris, or to serve under a churlish political appointee rather than under a more sympathetic career officer? Mr. Justice Stevens surely had it right when he remarked in *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), that "[t]he federal court

had the type of protected property interest they claim, we must look to the objective indicia supporting such a claim in a governing statute, regulation, or in agency-fostered policies or understandings. Their claim of an entitlement[8] to a fair promotion opportunity must therefore be evaluated within the context of Department of State "law" as it existed throughout the relevant periods.

■ Appellants argue that both the character of their employment in the Foreign Service and the mutual and explicit understandings fostered by the Department gave rise to a property interest in their within-class employment sufficient to entitle them to a fair chance at promotion. *See* Reply Brief for Appellants at 2. However, their expression of various opinions about the "career" nature of their employment alone fails to identify the source of this claimed entitlement. Most of the points made in their briefs are largely irrelevant or trivial. Thus, for instance, that Foreign Service officers "generally intend to stay in the Service until retirement," that they may not be dismissed "at the pleasure" of anyone, that the Department allegedly has, subsequent to their retirements, "virtually eliminated selection-out for time-in-class for middle level Foreign Service Officers," or that they otherwise have a right to a hearing when selected-out for cause or as a result of low rankings, *see*

Reply Brief for Appellants at 4–6, are insufficient indications they they enjoyed the type of property interest they claim. At most, these assertions only explain the genesis of their unilateral expectancies. Appellants have referred us to no statute, no regulation, or no internal statement of policy which we consider sufficient to support their claimed entitlement. This does not end the matter, however.

### III

Though the parties have made no mention of them, there in fact do appear to be certain explicit substantive restrictions on the Department's discretion in awarding promotions to its Foreign Service officers. Section 621 of the Foreign Service Act of 1946, for instance, expressly provides that "[p]romotion shall be by selection *on the basis of merit.*" 22 U.S.C. § 991 (1964) (emphasis added). Moreover, section 623 of the same Act authorizes the Secretary to establish selection boards "to evaluate *the performance* of Foreign Service officers, and upon the basis of their findings the Secretary shall make recommendations to the President for the promotion of Foreign Service officers." *Id.* § 993 (emphasis added).[9] There apparently is no disagreement that promotion is to be solely a function of relative performance. *See* 406 F.Supp. at 1252 ("Selection Boards are convened annually to review each officer's *performance*

---

is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Id.* at 349, 96 S.Ct. at 2080. That appellants' claim herein may be "overbroad" does not necessarily mean, however, that it is entirely without merit. *See* text at pages —–— of 186 U.S. App.D.C., at pages 1131–1132 of 567 F.2d, *infra.*

8. Conventional entitlement theory has not fared well in the periodical literature. *See, e. g.,* Perry, *Constitutional "Fairness": Notes on Equal Protection and Due Process,* 63 Va.L. Rev. 383, 419–30 (1977); Rabin, *Job Security and Due Process: Monitoring Administrative Discretion Through a Reasons Requirement,* 44 U.Chi.L.Rev. 60, 74–80 (1976); *The Supreme Court, 1975 Term,* 90 Harv.L.Rev. 56, 86–104 (1976); Comment, *Entitlement, Enjoyment, and Due Process of Law,* 1974 Duke L.J. 89 (1974).

It is not for this "inferior" court to change it, however, even were we disposed to do so.

9. We recognize, of course, that Congress has amended certain provisions cited here. *See* Foreign Relations Authorization Act, Fiscal Year 1976, Pub.L. No. 94–141, 89 Stat. 756 (amending 22 U.S.C. § 991 (1970)); Department of State Appropriations Authorization Act of 1973, Pub.L. No. 93–126, 87 Stat. 451 (amending 22 U.S.C. § 993 (1970)). We quote the relevant sections of the 1964 edition of *United States Code* so as to point out the possible substantive restrictions on the Department's discretion before appellants' retirement. The court is also cognizant of the procedural innovations enacted by Congress in 1975. *See* § 692(1)(D) of the Foreign Service Act of 1946, amended by Pub.L. No. 94–141, 22 U.S.C. § 1037a (Supp. V 1975).

*file* and to rank that officer in comparison with his peers *on the basis of relative merit.*") (emphasis added); Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss or in the Alternative for Summary Judgment, Record Doc. 9 ("The mutual understanding between plaintiffs and the Department of State was not an expectancy of continuation of employment for an indefinite period but, rather, an annual review of their qualification for promotion by Selection Boards during the prescribed time-in-class period.")

We believe that these provisions may provide a nonconstitutional basis for the relief appellants seek, at least in Mr. Colm's case,[10] inasmuch as they would appear to require promotion consideration based on performance and merit alone—a requirement presumptively inconsistent with inclusion and consideration of information in files, confidential or not, wholly unrelated to one's performance. Furthermore, section 612 of the Act states:

> Under such regulations as the Secretary may prescribe and in the interest of efficient personnel administration, the whole or any portion of an efficiency record shall, upon written request, be divulged to the officer or employee to whom such record relates.

22 U.S.C. § 987 (1964). The term "efficiency record" is defined as describing "those materials considered by the Director General to be pertinent to the preparation of an evaluation of the performance of an officer or employee of the Service." *Id.* at § 981. Again, these provisions in the Department's governing Act raise serious questions as to the practice of the agency in maintaining its parallel confidential "Development Appraisal Reports" during the period in question. *See* J.A. 35–36.

## IV

 We accordingly vacate the summary judgment awarded to the Government and remand the case back to the district court for determination whether these uncited sections of the Foreign Service Act provide a suitable basis for the relief appellants seek.[11] In the event that the court holds that they do not, it should further determine the constitutional issue whether these provisions, though never referred to by appellants, nonetheless provide an actual, objective basis for their claim of entitlement to "fair" consideration of their "promotability"—a statutory entitlement to an evaluation based upon merit so "inextricably intertwined" with their continuing employment that it creates a protected property interest necessitating due process protection.

*Vacated and remanded.*

ROBB, Circuit Judge, concurring in the Remand:

As I understand Parts I and II of the majority opinion they reach the conclusion that in the absence of 22 U.S.C. §§ 987, 991 and 993, the appellants would have no property interest which supports their challenge to the selection-out process. I agree with that conclusion. I am not persuaded however that the cited sections create the requisite property interest. Nevertheless because this issue was not briefed or argued before us I acquiesce in the remand, so that the matter may be explored by the district judge.

---

**10.** We recognize that Mr. McIntyre, who has only complained generally of secret adverse information in his personnel file, might well present a different case for purposes of this analysis.

**11.** Resolution of appellants' claims on statutory grounds would be preferable, being consistent with the fundamental principle that courts should avoid adjudicating constitutional ques-

tions if it is unnecessary to do so. Such avoidance is especially preferred where the nature of the constitutional issue poses a difficult decision with significant ramifications. *Cf. Sohm v. Fowler,* 124 U.S.App.D.C. 382, 365 F.2d 915, 918 (1966) (exhaustion of administrative remedies might well avoid necessity of constitutional adjudication).