**Deteria BROWN, Plaintiff,**

v.

**The UNITED STATES of America,**

**and**

**Secretary of the Treasury, Donald Regan, Defendants.**

**Civ. A. No. 85–0042.**

United States District Court, District of Columbia.

March 4, 1986.

Robert Capel, Jr., Washington, D.C., for plaintiff.

Scott Kragie, Asst. U.S. Atty., Washington, D.C., for defendant U.S.

## MEMORANDUM

GASCH, Senior District Judge.

This matter is before the Court on defendant United States Government's motion to dismiss or in the alternative for summary judgment. On the eve of oral argument on this motion, plaintiff filed a motion to amend her complaint to cure the defects the motion revealed in her case. At oral argument, the Court granted plaintiff's motion to amend the complaint. Nonetheless, for the reasons stated below, the Court will grant the motion to dismiss.

## I. FACTS

For more than 20 years, plaintiff Deteria Brown has been an employee of the Internal Revenue Service ("IRS"), a division of the Department of the Treasury. She is currently a Revenue Officer in the Forestville, Maryland IRS office. On May 30, 1984, she was informed by her supervisor that she would be denied a within-grade increase for failure to perform at an acceptable level of competence. She was given 80 days to improve her performance, as required by statute and regulation. Defendant's Exh. 1. On June 6, 1984, she filed a grievance, alleging her supervisor, Richard Waldman, "began a systematic attack on plaintiff which culminated in a poor promotion appraisal and denial of a within-grade increase." Amended Complaint, ¶¶ 8–9. That grievance was pursued through four steps of a process provided for in the collective bargaining agreement between the National Treasury Employees Union ("NTEU") and the IRS. Def. Exh. 2–10. Plaintiff was represented by an NTEU representative during the grievance. On September 20, 1984, plaintiff was officially notified that she was being denied the within-grade increase because she had not raised her work to an "acceptable level of competence" during the 80–day period. Def. Exh. 11. She did not appeal for reconsideration as she could have under 5 C.F.R. § 531.410 and under Article 36 of the NTEU pact [hereinafter "NTEU Agreement"].[1] She did not do so because she was informed by her supervisor that she could not be represented in that process by counsel of her own choosing. Amended Complaint ¶ 13, Def. Exh. 12–14. However, she was given an additional 15 days to refile for reconsideration on her own or with a union representative. Def. Exh. 14. She also could have filed a grievance had the reconsideration decision been against her. NTEU Agreement, Art. 10, sec. 5(B).

In her opposition to this motion, plaintiff elaborated on her claims, alleging her supervisor, Mr. Waldman, acting on false information that she spent time in a shopping center rather than on the job during a business trip, supervised her more closely than other employees. For example, plaintiff alleges Mr. Waldman required her to document how she would spend every hour of every work day, but did not so require

---

1. The NTEU Agreement was introduced into the record as an exhibit attached to defendant's motion to dismiss, but was not numbered.

other "similarly situated employees." Plaintiff's Opposition of August 15, 1985, p. 5 (hereinafter Plaintiff's Opp.). It is uncontested that plaintiff did not pursue the mechanism provided by statute, regulation and the NTEU pact for reconsideration of the determination that her competence level was unacceptable.

Plaintiff alleges her supervisor's actions deprived her of property without due process. Amended Complaint, ¶ 17. She seeks damages "in excess of $10,000." Amended Complaint, ¶ 23. In addition, at oral argument, plaintiff's attorney stated she was seeking declaratory judgment, as she had in her original complaint, that those acts were unconstitutional. Defendant U.S. Government moved to dismiss under Federal Rule of Civil Procedure 12(b) for improper venue, lack of subject matter jurisdiction, and for failure to state a claim upon which relief can be granted. At oral argument, defendant's attorney stated it would renew these very same objections to the Amended Complaint, which raises no new factual issues. Therefore, the Court will consider the motion to dismiss as applied to the Amended Complaint.

## II. DISCUSSION

### A. *Venue and Jurisdiction*

In both her amended and original complaints, plaintiff alleges jurisdiction is proper in this Court under 28 U.S.C. § 1331, because her case raises federal questions, and under 28 U.S.C. § 1346, which provides this Court with jurisdiction to hear certain cases where the United States is a defendant. In her original complaint, plaintiff asked for relief against the United States and its agent, the Secretary of the Treasury, in the form of declaratory judgment, injunctive relief, and a claim for monies due and owing for breach of contract.[2] In her Amended Complaint, plaintiff clarified the statutory basis for her claim and stated she seeks to recover damages in excess of $10,000. She made no contractual claim.

Defendant challenges venue and jurisdiction in this Court because plaintiff has, in both complaints, named the United States as a defendant and seeks to recover monetary damages. Therefore, jurisdiction is controlled by one of the two provisions of the Tucker Act, 28 U.S.C. § 1346 or § 1491, which govern suits for money damages against the government.

Section 1491 gives the Claims Court exclusive jurisdiction over claims against the government "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department...." Section 1346(a)(2) grants concurrent jurisdiction to the district courts and the Claims Court over such claims for less than $10,000. Because her Amended Complaint seeks more than $10,000, this Court cannot assert jurisdiction under Section 1346(a)(2).[3]

▮▮ That portion of plaintiff's Amended Complaint seeking more than $10,000 is clearly governed by Section 1491 and therefore falls within the exclusive jurisdiction of the Claims Court.[4] However, the question remains as to whether plaintiff's request for monetary relief prevents this Court from asserting jurisdiction over her request for declaratory judgment.[5] There is a split of authority on this issue.

2. Plaintiff also sought breach of contract damages against the National Treasury Employees Union ("NTEU"). However, her complaint against the NTEU was dismissed because plaintiff failed to serve NTEU.

3. This result moots defendant's motion to dismiss based on improper venue stemming from jurisdiction under Section 1346.

4. It should be noted that the Tucker Act is applicable whenever recovery would result in the expenditure of public treasury funds, even if an officer of the United States, rather than the United States itself, is named as a defendant. *Van Drasek v. Lehman,* 762 F.2d 1065, 1069 (D.C.Cir.1985), and cases cited therein.

5. As noted above, plaintiff sought declaratory judgment in her original complaint, but did not expressly request this relief in her Amended Complaint. However, at oral argument, her attorney stated she still intended to ask for a declaration that the defendants' actions were an unconstitutional deprivation of property without due process. Furthermore, in her Amended Complaint, ¶ 1, plaintiff bases jurisdiction on, *inter alia,* 28 U.S.C. § 2201, the Declaratory

Several courts have found that the Claims Court has exclusive jurisdiction under the Tucker Act even when a complaint seeks monetary damages as well as equitable relief and declaratory judgment. *See Keller v. Merit Systems Protection Board*, 679 F.2d 220 (11th Cir.1982); *Cook v. Arentzen*, 582 F.2d 870 (4th Cir.1978). In this District, in *Davila v. Weinberger*, 600 F.Supp. 599 (D.D.C.1985), Judge Hogan found a claim by federal employees was governed by the Tucker Act even though they sought declaratory and injunctive relief as well as money.

■ However, this line of cases has been criticized by the Claims Court and would appear to be contrary to several rulings of the Supreme Court. In *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), the Supreme Court reiterated that the Claims Court lacks the authority to grant declaratory judgments. *Id.* at 398, 96 S.Ct. at 953, *citing United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). *Testan* went on to explain that the Tucker Act is itself only a jurisdictional statute, and does not authorize the Claims Court to grant monetary judgments against the United States absent some other statute that creates a right to the monetary award. *Id.* 424 U.S. at 400, 96 S.Ct. at 954. Thus, any equitable powers that Section 1491 may confer on the Claims Court to order the readjustment of a federal employee's status may be exercised only in conjunction with an appropriate money judgment. *Id.* at 404, 96 S.Ct. at 956.

The effect of *Testan* on the apportionment of jurisdiction between the Claims Court and the district courts is explained in

Judgment Act. Although that act is not a jurisdictional statute, *see Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950), the Court will take this, along with plaintiff's attorney's oral representations and her request for "appropriate relief," Amended Complaint ¶ 23, as a request for declaratory judgment. Even if the Court determined plaintiff sought only money damages, it would review plaintiff's constitutional claim in deciding whether to dismiss or transfer this case to the Claims Court.

*Smith v. United States*, 654 F.2d 50, 228 Ct.Cl. 168 (1981). The *Smith* court noted that district courts may render judgment on a federal employee's nonmonetary claims, even where her monetary claims exceed $10,000. *Id.* 654 F.2d at 52; *see also Giordano v. Roudebush*, 617 F.2d 511, 514 (8th Cir.1980). As to the authority to issue a declaratory judgment, the Claims Court stated, "[O]nly the district court has that power; we do not." *Smith, supra,* 654 F.2d at 53.

The Court finds the explanation in *Smith* ably reasoned and in line with the Supreme Court authorities on this issue. Therefore, the Court concludes that it lacks jurisdiction over the plaintiff's monetary claims, but may consider her request for declaratory judgment.[6] Thus the Court must consider the government's motion to dismiss the substance of her constitutional claims for failure to state a claim upon which relief can be granted.

### B. *Subject Matter Jurisdiction/Failure to State a Claim*

Generally, this Court would lack subject matter jurisdiction to hear claims by federal employees based on statute or regulation where, as here, the employee has failed to exhaust her exclusive remedies under the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7121(a)(1), and the union grievance procedures. *See* NTEU Agreement, Art. 36; *see also Andrade v. Lauer*, 729 F.2d 1475, 1487 (D.C.Cir.1984); *Pinar v. Dole*, 747 F.2d 899, 910 (4th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985); *Carter v. Kurzejeski*, 706 F.2d 835, 840 (8th Cir.1983).

**6.** Plaintiff also alleged this Court had jurisdiction to review her claims under the Administrative Procedure Act ("APA"), which provides for review of agency decisions, 5 U.S.C. § 702. However, the CSRA commits non-adverse federal personnel decisions to the discretion of the agency, placing them beyond judicial review under the APA. *Carducci v. Regan,* 714 F.2d 171, 175 (D.C.Cir.1983); *Pinar v. Dole,* 747 F.2d 899, 913 (4th Cir.1984).

However, in this circuit, when a federal employee raises constitutional claims in connection with a negative personnel decision, the Court may consider them regardless of whether she has exhausted her administrative remedies.[7]  *Andrade, supra,* 729 F.2d at 1493; *Cutts v. Fowler,* 692 F.2d 138, 140 (D.C.Cir.1982).  Thus, in considering defendant's motion to dismiss for failure to state a claim, the Court must consider whether, taking plaintiff's factual allegations as true, her constitutional claims have any basis in law.  *Doe v. Department of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985).

The substance of plaintiff's due process complaint appears to be that she was denied an interest in property—the pay raise that accompanies a within-grade promotion—without due process, namely, without independent representation by a lawyer of her own choosing during the reconsideration and grievance procedures.

To demonstrate an interest in property under the due process clause of the fifth amendment, a federal employee must show she has a legitimate entitlement to that property.  *See Pinar, supra,* 747 F.2d at 913; *Carducci, supra,* 714 F.2d at 176, *citing Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972).  Plaintiff here was denied a promotion and a pay raise.  She did not lose her job; nor was she demoted.  A review of the case law indicates plaintiff was not deprived of any interest in property to which she was entitled in the constitutional sense.

"As a general matter, of course, a government employee has no property entitlement to a promotion and therefore lacks any constitutional basis for requiring some kind of hearing upon a nonpromotion decision."  *Colm v. Vance,* 567 F.2d 1125, 1130 (D.C.Cir.1977) (citations omitted).  Therefore, to have a fifth amendment property interest here, plaintiff must demonstrate that a legitimate entitlement to a promotion and pay raise was created by a statute, regulation or contract.  *Pinar, supra,* 747 F.2d at 913 (citations omitted); *Colm, supra,* 567 F.2d at 1131.  Such an entitlement may also be based on agency-fostered policies or understandings.  *Id. Kizas v. Webster,* 707 F.2d 524, 539 (D.C. Cir.1983), *cert. denied sub nom. Kizas v. United States,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

In her Amended Complaint, plaintiff argues 5 U.S.C. § 5335 creates an automatic entitlement to a within-grade increase.[8]  That provision states that an employee "who has not reached the maximum rate of pay for the grade in which his position is placed, shall advance in pay successively to the next higher rate within the grade," following passage of a specified period of time.  However, plaintiff ignores the fact that this within-grade increase is conditional, under Section 5335(a)(A), upon a determination that the work of the employee is of an acceptable level of competency as determined by the head of her agency.  Therefore, she has no entitlement to a conditional within-grade increase where she has not satisfied the condition, namely, that she be of an acceptable level of competence.

Plaintiff further contends she was denied due process because the agency did not permit her to pursue reconsideration of the negative competence level rating, as required under 5 C.F.R. § 531.410.  It is undisputed that the agency offered her reconsideration, but that she did not pursue it

7.  Had this case been brought in Maryland, where plaintiff lives and works, plaintiff would not be permitted to raise her constitutional issues in federal court before exhausting her administrative remedies.  The Fourth Circuit has announced a different rule under the CSRA, holding that the statutory remedies are constitutionally adequate to provide relief in the case of minor personnel actions.  *Pinar, supra,* 747 F.2d at 912.

8.  Plaintiff actually cites 5 U.S.C. § 535, see Amended Complaint ¶ 16, but since there is no statute so numbered, it would appear she meant to cite 5 U.S.C. § 5335.

because she was not allowed to be represented by her lawyer during that process. However, she had no right to a lawyer under the statutes or regulation cited by plaintiff. Plaintiff finds this "right" in the CSRA, 5 U.S.C. § 7114(a)(5)(A), which provides that a labor union is the exclusive representative for employees when negotiating collective bargaining agreements. The provision further states:

> (5) The rights of an exclusive representative under the provisions of this subsection shall not be construed to preclude any employee from—
>
> (A) being represented by an attorney or other representative, other than the exclusive representative, of employee's own choosing in any grievance or appeal action; [ ]
>
> *except in the case of grievance appeal procedures negotiated under this chapter* [5 U.S.C. § 7101 *et seq.* ]. (Emphasis added).

Plaintiff, relying on cases interpreting a similar provision in the National Labor Relations Act, argues that this provision has been interpreted to mean that the union is the exclusive representative at grievances concerning contract interpretation, but that the employee may have her own lawyer when the grievance involves individual issues. However, plaintiff's argument totally ignores the exception underlined above. A grievance appeal procedure encompassing the personnel action at issue here has been negotiated under the NTEU contract, *see* NTEU Agreement, Art. 36,[9] and thus plaintiff has no right to her own counsel. 5 U.S.C. § 7114(a)(5)(A).

In her Amended Complaint, plaintiff further implies she was entitled to have an attorney under 5 C.F.R. § 531.410, which sets out the procedure for requesting reconsideration of a denial of a within-grade increase. While subsection (a)(1) of that regulation permits an employee to have a "personal representative" at these proceedings, section (c) states that right shall be controlled by the limits of 5 U.S.C. § 7114. As noted above, in this case, plaintiff does not have a right to a lawyer under that provision.[10] In sum, denial of counsel did not deprive her of process which she was due as a matter of law.[11] Thus plaintiff's due process claim fails on two grounds:

---

**9.** The collective bargaining agreement between the NTEU and the Internal Revenue Service, attached to Defendant's motion, provides for grievance procedures in Article 36, which states in Section 1(C):

> The union agrees to submit virtually all contract-related matters to the negotiated grievance procedure for final disposition and to use sparingly unfair labor practice procedures concerning contract-related issues which may occur in the day-to-day administration of this Agreement.

Section 2(A) defines the term "grievance" as follows:

> The term "grievance" means any complaint: 1. by any employee concerning any matter relating to the employment of the employee.

Section 2(B) states:

> This procedure will be the *only* procedure available to bargaining unit employees for the processing and disposition of grievances defined in A, except when the employee has a statutory right of choice, i.e., adverse actions or actions taken for unacceptable performance. A list of all statutory appeal procedures is contained in Appendix G. (Emphasis added).

Appendix G lists those matters which must be submitted to grievance procedure, and those

which the employee may grieve at his option. An appeal concerning "Acceptable Level of Competence," which is what is at issue here, *must* be submitted to the grievance procedure.

**10.** In asserting her right to independent representation, plaintiff further relies on 5 U.S.C. § 4303 and regulations promulgated thereunder, 5 C.F.R. § 432.101 *et seq.* Amended Complaint, ¶ 20. Section 4303(b)(1) permits an employee who has been removed from her job or suffered a reduction in grade because of unacceptable performance to retain a lawyer or other representative. Plaintiff here has not suffered a reduction in grade or removal from office; thus this section is wholly inapplicable. Similarly, 5 C.F.R. § 432.204(c), governing the employee's right to representation in the case of reduction in grade or removal, is inapplicable. Even if it did apply to plaintiff's case, the regulation notes that the right to an attorney would be governed by 5 U.S.C. § 7114(a)(5), which as noted above, provides that an employee covered by a collective bargaining unit may not obtain independent representation.

**11.** Plaintiff does not challenge the constitutionality of 5 U.S.C. § 7114(a)(5)(A), which denies her the right to independent counsel in this situation.

she was not deprived of a constitutional property interest, and she was not denied due process. Therefore, even taking the facts alleged in a light most favorable to plaintiff, she has failed to state a constitutional claim upon which relief may be granted.

### C. Transfer or Dismissal

 As stated above, this Court lacks jurisdiction over plaintiff's claim for damages in excess of $10,000. Plaintiff did not request that the Court transfer the case under 28 U.S.C. § 1631 to the Claims Court. Nonetheless, under that statute, this Court must consider whether transfer would be appropriate. *Ingersoll Rand Co. v. United States*, 780 F.2d 74, 80 (D.C.Cir. 1985); *Center for Nuclear Responsibility, et al. v. Nuclear Regulatory Comm'n,* 781 F.2d 935, 937 (D.C.Cir.1986) (Ginsburg, dissenting). The Court finds that such a transfer would not be appropriate.

It is axiomatic that the government's sovereign immunity cannot be breached except by statute. *Testan, supra,* 424 U.S. at 399, 96 S.Ct. at 953. The Claims Court cannot provide monetary relief unless some statute, other than its own jurisdictional statutes, creates a right to that relief. *Id.; Smith, supra,* 654 F.2d at 52. Plaintiff fails to specify any statute which permits her to recover money from the government. Therefore, the Claims Court lacks jurisdiction and transfer would be futile. *Maryland Dept. of Human Resources v. Dept. of Health and Human Services,* 763 F.2d 1441, 1450 (D.C.Cir.1985).

### III. CONCLUSION

In light of the foregoing, the Court concludes it lacks jurisdiction to hear plaintiff's claim for monetary relief in excess of $10,000. Under the Tucker Act, 28 U.S.C. § 1491, plaintiff's monetary claim against the United States would be within the jurisdiction of the Claims Court. The Court further concludes plaintiff was not de-

prived of property without due process in violation of the fifth amendment. In light of this Court's conclusion that plaintiff's allegations fail to make out a constitutional claim upon which relief may be granted, and in light of plaintiff's failure to specify any statute which would permit her to recover money damages from the government, the Court concludes transfer of the monetary claim to the Claims Court is not justified. Therefore, the Court will grant the government's motion to dismiss the entire complaint.[12]

---

12. The Court will also, therefore, deny plaintiff's cross-motion for partial summary judgment on the constitutional issue.