Clarence E. OKESON,
Appellant/Appellee,

v.

TOLLEY SCHOOL DISTRICT NO. 25, COUNTY OF RENVILLE, STATE OF NORTH DAKOTA, a public corporation; and Terry Spear, Ernest Mau, Wayne Hellebust, Carol Resch, and Gerald Egeberg, individually and as members of the School Board of Tolley Public School District No. 25, Appellees/Appellants.

Nos. 84–1254, 84–1255.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 9, 1984.
Decided April 19, 1985.

Richard H. McGee, Minot, N.D., for appellant/appellee.

James S. Hill, Bismarck, N.D., for appellees/appellants.

Before LAY, Chief Judge, and ROSS and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Clarence E. Okeson appeals from a final judgment entered in the District Court for the District of North Dakota following a jury verdict in favor of appellees, the Tol-

ley School District No. 25 (School Board) and five members of the School Board. Okeson brought this action after his termination by the School Board. Okeson alleged that appellees deprived him of property and liberty interests without affording him procedural due process. For reversal Okeson argues that the district court erred in (1) permitting appellees to raise the affirmative defense of waiver of notice, (2) submitting the question of waiver of notice to the jury, (3) inadequately instructing the jury on waiver, and (4) denying the motion for judgment notwithstanding the verdict. Appellees in a cross-appeal argue that the district court erred in denying their motion for attorney's fees and certain costs. For the reasons discussed below, we reverse and remand with directions.

The Tolley School District No. 25 serves the small rural community of Tolley, Renville County, in the northwestern part of North Dakota. The School District in 1981 had approximately 65 students in the elementary and secondary schools and was operated by a five-member School Board.

Okeson was hired as superintendent of the School District by the School Board on May 22, 1981. The written contract covering the period from July 1, 1981, to June 30, 1982, stated that Okeson would be paid an annual salary, that a house would be provided by the School District, and that $3,500 would be paid to Okeson for utilities, mileage and other expenses.

At the time Okeson was hired, he had a bachelor of arts degree in business and finance from the University of Washington and a master of science degree in education from Black Hills State College. Okeson had also participated in other graduate classes and programs. He had previously been employed as a teacher, principal, and superintendent.

School Board members testified that they became concerned about Okeson's performance early in the school term and discussed their concerns among themselves. The initial problems concerned the housing provided to Okeson. Okeson lived for two months in one house provided by the School District and approximately one week in a second house provided by the School District. He testified that he moved from the second house because it was infested with bugs, rats, and other pests. Okeson subsequently secured housing outside the School District in Foxholm, North Dakota, and submitted the bills to the School Board. The School Board refused to pay the bills.

School Board members testified that they were also concerned because Okeson failed to complete the state aid forms required by the State of North Dakota before the allotted money from the state could be released to the School District. Approximately $40,000, or 24% of the School District's budget, was secured from the state in this manner. The School Board members discussed this subject at the October 1981 board meeting and instructed Okeson to submit the forms. Okeson admitted during the trial of this case that he had not submitted the forms as of the November 1981 board meeting.

The School Board also was concerned about Okeson's absence for approximately five working days during the first week in November 1981. Okeson testified that he had received permission from the School Board chairperson to respond to subpoenas in Oregon and Colorado. The chairperson testified that he did not give permission and did not know that Okeson was out of the state until November 6, 1981, when he called Okeson's home to discuss some student suspensions. Okeson's wife initially told the chairperson that Okeson was sick but subsequently admitted that he was out of town. Okeson later, on the same day, called the chairperson and was told to return as soon as possible.

Between the October 1981 and the November 1981 board meetings, the chairperson consulted an attorney. The attorney advised the chairperson that the School Board had sufficient grounds to terminate Okeson and that a hearing was not necessary under state law.

On November 9, 1981, a regularly scheduled board meeting was held and was attended by Okeson, the attorney consulted by the School District, the five board mem-

bers, and parents of children in the School District schools. Okeson testified that he was not told that his performance and contract would be discussed at the board meeting although he had met with the School Board chairperson earlier in the day, had prepared and delivered the board meeting agenda to the School Board chairperson approximately a week before the meeting and inquired at the beginning of the meeting why an attorney was present. The chairperson denied talking to Okeson on November 9, 1981, prior to the board meeting.

The manner in which the meeting was conducted is disputed. Okeson testified that questions "were fired" at him and he was often not given an opportunity to answer. The School Board members testified that Okeson was asked simple questions which he refused to answer. The parties agree that the School Board members and persons in the audience directed questions to Okeson, that the School Board asked him to resign, and that the School Board voted unanimously to terminate the contract after Okeson refused to resign.

Okeson filed his original complaint, seeking actual and punitive damages, in February 1982 under 42 U.S.C. §§ 1983, 1988 (1982) against the School District and the five members of the School Board in their individual and official capacities. In January 1983 the district court granted summary judgment in favor of the School District on the punitive damages claim. 570 F.Supp. 408.

On February 22, 1983 (one year after the original action had been filed), Okeson was granted permission to dismiss Count II and Count III of his complaint[1] because "discovery and investigation indicate insufficiency of evidence." The district court dismissed Counts II and III with prejudice.

The two remaining counts were tried to a jury from August 11–15, 1983. The jury

returned a verdict in favor of the School District and the school board members. Okeson's motions for a new trial and for judgment notwithstanding the verdict were denied. This appeal followed.

Appellees filed a cross-appeal with respect to that portion of the January 23, 1984, order which denied them attorney's fees and costs for depositions.

Okeson first argues that the district court erred in permitting the School Board to raise the defense of waiver of notice because waiver is an affirmative defense which had not been pleaded or raised prior to the conference on jury instructions. Appellees concede that the defense of waiver was not pleaded but argue that the issue was tried with the implicit consent of the parties because evidence on waiver was introduced throughout the trial without objection and Okeson does not claim surprise or prejudice.

"An affirmative defense which is not pleaded is generally deemed waived.... Even so, in practice an affirmative defense is not waived to the extent that the party who should have pled the defense introduces evidence in support thereof without objection by the adverse party ...." *Jones v. Miles*, 656 F.2d 103, 107 n. 7 (5th Cir.1981) (citations omitted); *see Mason v. Hunter*, 534 F.2d 822, 825 (8th Cir.1976); Fed.R.Civ.P. 15(b). Okeson's objection to the trial of this issue was untimely because it was not made until the instruction conference. We hold, therefore, that the defense of waiver of notice was tried with the implied consent of the parties.

Okeson next argues that the district court erred in denying his motion for judgment notwithstanding the verdict because there was no evidence from which reasonable persons could have concluded that he had received notice or that he had waived the right to notice.

[1]. Count II alleged that the members of the School Board had made public statements derogatory to Okeson in connection with the discharge which deprived him of liberty rights secured by the fifth and fourteenth amendments of the United States Constitution and 42 U.S.C. § 1983 (1982). Count III alleged that Okeson had been dismissed in violation of North Dakota's "fair dismissal" statute.

The district court should grant judgment notwithstanding the verdict only if reasonable minds viewing the evidence could not differ as to whether the movant should prevail. The court must examine the evidence in the light most favorable to sustaining the verdict of the jury and must give the prevailing party the benefit of all reasonable inferences which may be drawn from the evidence. "The verdict ... must be supported by substantial evidence; mere scintilla is not enough." *Harris v. Pirch,* 677 F.2d 681, 683 (8th Cir.1982) (citations omitted); *see Banks v. Koehring Co.,* 538 F.2d 176, 178 (8th Cir.1976).

■ "Due process under the Fourteenth Amendment requires that state governments provide minimal procedural safeguards, including some form of notice and a hearing, before taking actions that deprive an individual of 'liberty' or 'property.'" *Kersey v. Shipley,* 673 F.2d 730, 732 (4th Cir.) (citations omitted), *cert. denied,* 459 U.S. 836, 103 S.Ct. 80, 74 L.Ed.2d 77 (1982); *see Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 779–80 (9th Cir.1982). "[A] fundamental purpose of the due process clause is to allow the aggrieved party the opportunity to present his case and have its merits fairly judged." *Pollock v. Baxter Manor Nursing Home,* 716 F.2d 545, 546–47 (8th Cir.1983) (citations omitted) (per curiam).

■ Appellees admit that the School Board did not give Okeson notice of a hearing before the November School Board meeting. Appellees, however, assert that everyone in Tolley knew that the School Board considered Okeson's performance to be questionable or inadequate. Further, appellees argue that Okeson expressed some concern during the trial about being fired if he had given the School Board certain information. Consequently, appellees argue that Okeson must have known that his employment would be a topic for discussion at the meeting and therefore he had actual notice. "[M]ere rumors, vague statements, and circumstances that are dubious or equivocal and do no more than arouse suspicion or create speculation, are not sufficient to constitute actual notice." *E.D. Systems Corp. v. Southwestern Bell Telephone Co.,* 674 F.2d 453, 459 (5th Cir.1982) (citations omitted). We hold that a rational jury, on the basis of the record before this court, could not have found that Okeson received actual notice.

■ Appellees in the alternative argue that Okeson by his acts waived his right to notice. If a waiver is to be effective, it must be a voluntary, intentional relinquishment or abandonment of a known right or privilege. *Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314 (1966); *Pastrana v. Federal Mogul Corp.,* 683 F.2d 236, 241 (7th Cir.1982); *Ithaca Corp. v. Housing Authority,* 541 F.2d 1317, 1323 (8th Cir.1976). Further, there is a presumption against the waiver of constitutional rights. *Brookhart v. Janis,* 384 U.S. at 4, 86 S.Ct. at 1247. "If proof of a waiver rests on one's acts, 'his [or her acts] ... should be so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of his [or her] conduct is possible.'" *Bechtel v. Liberty National Bank,* 534 F.2d 1335, 1340 (9th Cir.1976) (citations omitted); *see Pastrana v. Federal Mogul Corp.,* 683 F.2d at 241.

No reasonable inference of waiver may be drawn from the fact that Okeson was well educated or that he reasonably should have known that he had the right to notice and did not request a continuance. However, even if Okeson knew of his right to notice, the evidence must clearly indicate that he relinquished that right. Okeson's presence at the board meeting, which he was required to attend, and participation (or non-participation) in the meeting does not constitute clear and unequivocal evidence of waiver. We hold that a rational jury could not have found that Okeson waived his right to notice. The district court therefore erred in denying Okeson's motion for judgment notwithstanding the verdict.

Lastly, we consider the issue of damages. The School District had a valid reason for terminating Okeson's contract. Okeson admitted that he had not submitted state aid forms for the district although this was one of his duties as superintendent and the School Board had specifically instructed him to submit the forms. This reason alone was sufficient to justify Okeson's termination. In addition, there was evidence that Okeson was away from the School District for five working days without permission, had misrepresented that he was an attorney, had given false information concerning his past employment, and had moved from the district without informing the School Board. However, as noted in *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978) (citations omitted), "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions ... [and] the denial of procedural due process should be actionable for nominal damages without proof of actual injury." A plaintiff is therefore entitled to nominal damages because of the defendant's failure to give adequate notice and an opportunity to be heard even if the action taken is shown to be warranted. *Id.* at 266, 98 S.Ct. at 1053; *Pollock v. Baxter Manor Nursing Home,* 716 F.2d at 547. Here, appellees failed to give Okeson adequate notice and thereby violated his constitutional right to procedural due process. Okeson is therefore entitled to nominal damages only and reasonable attorney's fees. *Pollock v. Baxter Manor Nursing Home,* 716 F.2d at 547.

Appellees argue on cross-appeal that the district court erred in denying their motion for attorney's fees and costs as prevailing defendants because Okeson's suit was clearly frivolous, vexatious, or brought for harassment purposes. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421–22, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). The order denying appellees' motion for attorney's fees and costs is affirmed because appellees, under our decision in this case, are no longer the prevailing parties.

Accordingly, the judgment of the district court is reversed, Okeson is awarded nominal damages of one dollar ($1.00), and the cause is remanded to the district court for the purpose of determining reasonable attorney's fees. The order denying appellees' motion for attorney's fees and costs is affirmed.