**Walter J. THOMAS, Plaintiff,**

v.

**James A. BAKER, III, Defendant.**

**Civ. A. No. 87–1606.**

United States District Court,
District of Columbia.

July 13, 1989.

June D.W. Kalijarvi, George M. Chuzi, Kalijarvi & Chuzi, Washington, D.C., for plaintiff.

Bradley Kelly, Asst. U.S. Atty., Washington, D.C., for defendant.

## OPINION AND ORDER

REVERCOMB, District Judge.

This case involves claims by the plaintiff that he was terminated from the Department of State's Foreign Service in violation of applicable regulations and due process. He seeks back pay, reinstatement, and promotion. Oral argument was heard on February 10, 1989 on cross-motions for summary judgment.[1] In this opinion and order, the Court grants summary judgment in favor of the defendant.

## I. FACTS

Plaintiff Walter J. Thomas was appointed in 1977 as a Foreign Service Reserve Career Candidate through the Mid–Level Hiring Program for Women and Minorities. He was part of the "03" class. On March 11, 1983, after passing an oral examination in 1982, he was commissioned and tenured as a career member of the Foreign Service. In July of 1983, however, a State Department Selection Board suggested to a Performance Standards Board ("PSB") that Mr. Thomas be terminated (referred to by the euphemism "selection out") for failure to meet the standards of the 03 class. After the PSB agreed with the Selection Board, Mr. Thomas appealed to the Special Review Board ("SRB").

At the hearing before the SRB, the panel denied requests by Mr. Thomas to compel testimony from members of the PSB or to permit testimony from a member of the Selection Board, on the ground that the testimony would not be relevant or material to the proceeding. After a hearing and receiving other evidence, the SRB affirmed the decision of the PSB to terminate Mr. Thomas. This suit followed.

This Court has jurisdiction over the matter pursuant to 22 U.S.C. § 4140, which establishes direct judicial review of certain final State Department actions. A Court, reviewing the case on the record, may overturn a final State Department action if the action was, among other things, not supported by substantial evidence or not in accordance with the applicable law. 5 U.S.C. § 706 (referred to in 22 U.S.C. § 4140).

The plaintiff alleges two categories of State Department errors. First, he argues that the Department terminated him in clear violation of State Department regulations against terminating him. Second, he contends that the SRB failed to provide him with procedural and evidentiary rights during his appeal. The Court deals in turn with each of the allegations.

---

**1.** The Court also hereby GRANTS the plaintiff's motion for leave to amend the complaint and ORDERS that the amended complaint be filed.

## I. State Department Termination Regulations

The Department of State's Foreign Affairs Manual ("FAM") Circular, which governs aspects of personnel regulation, stated in 1983 in part that:

All career members of the Foreign Service who have been in present class or equivalent previous class for a total of 1 year or more as of July 1, 1983, will be reviewed for possible referral to an appropriate Performance Standards Board for consideration for selection-out for failing to maintain the standards of performance for their class.

FAM Circular 83–10, Part II, § C. The defendant alleges that because the plaintiff joined the "03 class" when he was hired in 1977 as a Foreign Service Reserve Career Candidate, he was eligible for selection out under FAM Circular 83–10 in 1983, even though he had been a career officer for only a few months. The plaintiff contends that a sensible reading of FAM Circular 83–10 would require that a career member have been a career member for at least one year before being eligible for termination under FAM Circular 83–10.

█ When confronted with a dispute concerning the interpretation of an agency's regulation, the agency's interpretation naturally is given considerable deference. *Shepherd v. Merit Systems Protection Board*, 652 F.2d 1040, 1043 (D.C.Cir.1981). There are exceptions, of course, to avoid upsetting the expectations of parties or circumventing the proper procedures for decisionmaking at the agency. For example, a court should reject (1) a contorted or artificial interpretation, *see id.*, and (2) an interpretation that appears to have been adopted in order to aid the agency in a particular dispute with a particular employee.

█ In the instant case, the Court concludes that the agency's interpretation of its regulation was both a reasonable one and was not concocted in order to support the defendant's position in this case. First, the plain words of the section at issue—"All career members ... who have been in present class ... for a total of 1 year or

more"—appear to cover Mr. Thomas, who was a career officer in August 1983 and who had been in the 03 class since 1977. Second, the Court disagrees that the term "in present class" should be interpreted by grafting onto it 3 FAM 732.2(a), which governs the process of selection out on the ground that the officer has exceeded maximum time-in-class—an entirely different mechanism for selection out. The section relating to selection out because of relative performance, 3 FAM 732.3, is clarified not by 3 FAM 732.2, but by FAM Circular 83–10.

An affidavit from Cheryl R. Hodge, Chief of the Policy Guidance and Foreign Service Review Boards Division and chief administrator of the selection out process, stated that her understanding of the regulations was that "[n]owhere do [the regulations] provide that a member be tenured for any particular length of time before becoming eligible for consideration for selection out for relative performance." Hodges' Affidavit at 4. Rather, the only time requirement for a selecting out a career employee is that he must have been a member of his class—such as the 03 class that Mr. Thomas had been in since 1977—for one year. *Id.*

The plaintiff points out, somewhat persuasively, that the defendant's interpretation creates an odd result: it sets a requirement that a career officer cannot be selected out before one year after entering his class—presumably in order to allow a full comparison to others in the class—yet at the same time does not require that he be given *any* length of time to be evaluated *as a tenured career officer* before he may be selected out. For example, Mr. Thomas was referred for selection out only a few months after he had been made a career, commissioned officer.

This is not necessarily an irrational scheme, however—the State Department may rationally believe that the best comparison among foreign service officers is to other members in their class, without regard to when the employee is granted tenure. Moreover, because of budget or other constraints, an agency may have to cut the

number of its employees in a brief period of time; the interpretation set out by the Department would enable it to terminate Foreign Service officers who have been evaluated for at least one year, without the added constraint of not being able to terminate career members merely because they have been tenured for less than a year. In sum, the State Department's interpretation of FAM Circular 83–10 appears to be a reasonable one and appears not to have been adopted merely for purposes of this case or in order to circumvent the proper policy-making processes at the State Department.

Finally, it may be argued that it is incoherent or unfair to decide to terminate a career member based on a record that was substantially similar to that which was used to grant him tenure just a few months before. In the Thomas case, however, there were significant differences between the information and criteria evaluated by the Board of Examiners (BEX) that recommended Mr. Thomas for tenure and those evaluated by the boards that decided to terminate Mr. Thomas. First, the BEX recommended tenure for Mr. Thomas largely on the basis of an oral examination, whereas the boards that approved his termination based their conclusions primarily on a review of his work evaluations. It is not inconsistent for the State Department to be impressed by an oral examination but at the same time to be disturbed by work evaluation reports.

Second, and perhaps even more significantly, the boards that decided to approve the termination had the opportunity to review the plaintiff's last 1982 employee evaluation, which was not available to the BEX that recommended him for tenure. This report, which the SRB called "devastating," *SRB's Decision* at 9, was clearly the most damaging piece of evidence against Mr. Thomas. It was not unreasonable under State Department regulations, the Court concludes, for Department to engage in a full-scale re-evaluation of Mr. Thomas after receipt of the 1982 evaluation, despite the fact that he had been tenured only a few months earlier.

Accordingly, the Court finds no reason to reject the defendant's interpretation of its regulations.

## II. Procedural Allegations

■ The plaintiff also contends that the defendant violated his right to due process during the SRB hearing in his case. A Foreign Service officer has a constitutional right to a fair and full hearing before termination, including the right to review materials and to call witnesses. *Lindsay v. Kissinger*, 367 F.Supp. 949, 955 (D.D.C. 1973).

The plaintiff alleges that the SRB violated due process by (1) failing to permit him to call as a witness Dr. Ernest Holmes, a member of the Selection Board that referred Mr. Thomas for termination and who would have testified about alleged irregularities, and (2) failing to permit him to examine PSB members to determine whether the PSB complied with the regulation that it review no fewer than 10 files of other officers. He also claims that the PSB violated his rights by considering his "low-ranking" in 1979, even though that ranking was removed from his record.

### A. Denial of Witnesses

■ The plaintiff wished to call before the SRB Dr. Holmes, who has provided an affidavit stating that the Selection Board that referred Mr. Thomas for termination deliberated without Mr. Holmes and not in formal session, made improper personal comments about some officers that they reviewed, and improperly relied on hearsay and personal opinions about Mr. Thomas in making their decision to refer him for termination. The defendant in this case argues that the SRB did not violate due process by denying Mr. Thomas the opportunity to call Dr. Holmes, because the SRB is given the right to refuse to permit evidence that is not "deemed relevant and material by the Board." 3 FAM 730, attach. 2, § 5(d)(4); *Lindsay*, 367 F.Supp. at 955 (right to present "relevant and material information through witnesses willing to appear"). Because the SRB determined that Dr. Holmes' testimony would not be

relevant or material, the defendant argues, the due process requirements have been met.

This Court disagrees. Although any tribunal must be free to exclude evidence that is irrelevant or immaterial, *e.g.*, Fed.R.Evid. 402, the discretion given to the tribunal should not mean that its decisions are unreviewable. In this case, the Court concludes that the SRB erred in not permitting Dr. Holmes to testify. Although his testimony may have included unsettling comments about the internal operations of the State Department's Selection Boards, a tribunal should not exclude relevant evidence merely because it might constitute "dirty laundry." Moreover, although evidence that the Selection Board made procedural errors in its decision might have had no effect on the decisions of the PSB and the SRB, which primarily reviewed the *merits* of Mr. Thomas' qualifications to continue as a career officer, a tribunal should not refuse evidence that might help it in some way determine whether a panel beneath it based its decision on flawed or improper evidence. Under the requirement of due process, State Department personnel boards—like courts of law—should have liberal standards of materiality and relevancy in order to ensure that an officer is given a full opportunity to air his side in what to the officer is a crucially important proceeding. This the SRB failed to do.

The plaintiff also contends that he was denied due process by the SRB's refusal to order testimony from members of the PSB about whether the PSB fulfilled its requirement that it review at least 10 performance files of other members of an officer's class before taking action with regard to that officer. On this point, the Court finds that the SRB did not violate Mr. Thomas' right to due process. When a party in a proceeding makes the extraordinary allegation that a lower panel has violated its own rules, the higher panel must be presented with some evidence before it takes the unusual step of compelling testimony from members of the lower panel. *See Lindsay*, 367 F.Supp. at 953 (due process right to call favorable witnesses that

are "willing to appear"). When an allegation of deviation from procedural standards is alleged, the alleging party must show some reason why it should be permitted to drag before the tribunal persons against whom the allegations are made. The usual rule against compelling testimony through a "fishing expedition" is compounded by the fact such a policy would enable alleging parties to harass, bother, and perhaps even intimidate members of the lower panel. The alleging party would be able to create allegations out of thin air and compel testimony from the lower panel on every possible area of contention in the hope of coming across some mistake.

In the instant case, Mr. Thomas presented not a scrap of evidence to support his allegation of procedural errors by the PSB. To the SRB, there was no reason to believe that the PSB committed a violation of the 10–file regulation any more than it committed any other possible procedural violation. Accordingly, the Court concludes that the SRB did not violate due process requirements by not compelling testimony from members of the PSB, because there was no reason whatever to inquire into the actions of the PSB.

### B. Improper Evidence

The plaintiff also contends that the SRB erred in refusing him the opportunity to question members of the PSB about its mention of the fact that Mr. Thomas was "low-ranked" because of his performance evaluation for 1979, even though this evaluation was later expunged from his file. The SRB concluded that the PSB did not consider the evaluation that was the basis for the 1979 low-ranking, *SRB's Decision* at 2, even though the decision of the PSB specifically mentioned that Mr. Thomas was low-ranked in 1979. *PSB's Designation for Separation* at 1.

The Court concludes that the SRB erred in determining that there was no flaw in the PSB decision. While it was reasonable for the SRB to conclude that the PSB did not consider the evaluation that was expunged from Mr. Thomas' file, the PSB still erred in mentioning—and presumably

considering—the 1979 low-ranking that was based on this evaluation. However, for the reasons stated in Section III of this opinion, the Court concludes that the SRB's failure to make such a determination regarding the PSB's decision is not grounds for overturning the decision of the SRB.

### III. Relief

██ Legal proceedings almost invariably involve at least one appeal, if not more, in which the evidence and the record is reevaluated and new decisions are made. Appeals are a right granted to the person against whom action is taken in order to ensure that the action is based on the merits, not on whims or biases, and to ensure that the person has received procedural safeguards that in turn ensure that the decision on the merits is decided fairly. One inevitable consequence of having a number of panels review the same record and make decisions is that one of the lower panels may make a decision that the higher panel finds to be in error. If every procedural error, no matter how slight, led to a reversal, few cases involving multiple hearings could ever achieve a positive conclusion and, more significantly, the search for a fair decision on the *merits* would be perverted—an especially ironic conclusion, considering that the chief purpose of the right to appeal is to ensure a fair decision on the merits.

The specter of such a problem has led courts to adopt the doctrine of "harmless error," under which an error does not lead to reversal in the appellate courts if it does not "affect the substantial rights of the parties." 28 U.S.C. § 2111; *see also* Fed. R.Civ.P. 61 (no reversal unless error is "inconsistent with substantial justice"). This rationale naturally is even stronger in the context of an appeal that includes the right to call witnesses and present evidence.

In the matter at hand, the decision of the Selection Board to refer Mr. Thomas for "selection out" was not Mr. Thomas' last recourse. The PSB fully reviewed the record of Mr. Thomas and concurred in the decision of the Selection Board that he

should be terminated. After that, Mr. Thomas had recourse to the SRB, which held a hearing, heard the evidence, reviewed the record again, and still affirmed the decision of the PSB. More than four years later, the matter was again reviewed, this time by this Court through cross-motions for summary judgment and yet another presentation of the record.

In this case, the Court agrees with the plaintiff that the SRB erred in two respects —(1) by failing to permit a member of the Selection Board to testify about alleged irregularities during the Selection Board's decisionmaking process and (2) by failing to conclude that the PSB had made use of improper evidence in its determination. Although these two errors were made in the SRB's decision, they concerned errors allegedly made at levels beneath the SRB. The Court concludes that the errors of the SRB were clearly not of the level to justify the award of reinstatement or back pay to Mr. Thomas. The primary reason for the Court's determination is that the SRB's opinion on the plaintiff's termination—the third such determination in the State Department—constituted a complete and unbiased evaluation of the merits of the decision to terminate Mr. Thomas.

The SRB is broadly empowered by State Department regulations to "conduct a hearing to receive oral testimony as well as to consider all evidence that was available to the PSB." 3 FAM 732.3d(3). Mr. Thomas took advantage of this right at his SRB hearing—he presented into evidence 210 exhibits. *SRB's Decision* at 1. This right of the appellant to present evidence on his own behalf makes an SRB proceeding much more like a *de novo* consideration of the merits than a federal court appeal, in which the appellate court gives considerable deference to the findings of fact of the trial court. This reconsideration of the evidence at the SRB both provides the appellant essentially with a second opportunity to present his case, and makes much less significant any errors that the PSB or the Selection Board may have made.

Although the Court has found that the SRB erred in two areas, the Court also

concludes that the SRB gave Mr. Thomas a full opportunity to re-argue the merits of the decision to terminate, and that the SRB gave a sound and reasonable explanation of its reasons why Mr. Thomas should have been terminated. Even if the SRB had found irregularities in the Selection Board's decision and had found that the PSB improperly considered the fact that Mr. Thomas was low-ranked in 1979, it is also clear to the Court that the SRB's own evaluation of the facts of the plaintiff's case and its evaluation of his performance would have and should have remained unchanged.

Crucially, the SRB did not rely on the findings of the PSB, but found its own facts. *SRB's Decision* at 1. This fact alone makes any errors that may have occurred at the Selection Board or the PSB less significant than they otherwise would have been. Moreover, the SRB's decision focused on the fact that the plaintiff's performance unmistakably had deteriorated during his years in the Foreign Service. His ratings moved from "very good," *id.* at 2, to merely "satisfactory," *id.* at 3-4, to "marginally satisfactory" in his last rating period, in late 1982. *Id.* at 5. During 1982, his rating officer stated that his performance was "not up to the standards expected from a Supervisory General Services Officer," that the plaintiff's "lack of knowledge" of certain procedures "has delayed shipments, prevented schedules from being implemented, delayed ordering supplies" and other problems, and that his "supervision of his subordinates is not adequate." *Id.* at 4. In his last rating period, his rating officer criticized the plaintiff for not paying adequate enough attention to routine and "everyday problems," mentioned that they had met daily to discuss his work, and suggested that his talents "would be better utilized in another area." *Id.* at 6. His reviewing officer agreed that the plaintiff was not performing satisfactorily in his position. *Id.* at 7. These last evaluations were considered the "most devastating" to his performance record. *Id.* at 9. All in all, it is clear to the Court that the SRB made its determination to deny Mr. Thomas' appeal based on his record and evaluations, making substantially irrelevant for this Court's purposes the alleged irregularities in the lower panels.

A number of courts have held that due process violations in public employee discharge cases need not result in reinstatement or back pay if the defendant can show that the error was not substantive to its decision and that actual injury was not caused to the employee. *See, e.g., Patkus v. Sangamon–Cass Consortium,* 769 F.2d 1251, 1265–66 (7th Cir.1985); *Hogue v. Clinton,* 791 F.2d 1318, 1325 (8th Cir.1986); *Okeson v. Tolley School District No. 25,* 760 F.2d 864, 869 (8th Cir.), *rev'd on other grounds,* 766 F.2d 378 (8th Cir.1985); *see also Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (no monetary damage award for due process violation arising from school suspension). Courts may evaluate whether the termination was justified and whether the due process violation was substantive to the decision. *Patkus,* 769 F.2d at 1265–66. Rather, the compensation for minor due process violations by state officials is only nominal damages. *Id.; Hogue,* 791 F.2d at 1325; *Okeson,* 760 F.2d at 869 (damages of $1 awarded). In the instant case against a federal defendant, however, damages are not sought.

In the instant case, the Court concludes that the errors of the State Department—failure to allow testimony from Dr. Holmes about the Selection Board and failure to acknowledge that the PSB improperly considered the plaintiff's 1979 low-ranking—did not cause the plaintiff actual injury. In both cases, the mistakes alleged were at panels lower than the SRB: Dr. Holmes' testimony raised questions only about the validity of the Selection Board's actions and the 1979 low-ranking issue raised questions only about the validity of the PSB's actions. Neither error, however, prevented the SRB from making an unbiased and untainted determination of the merits of the decision to "select out" the plaintiff. Accordingly, the Court concludes that the due process violations did not cause actual injury and do not justify reinstatement, back pay, or other relief.

Accordingly, the Court GRANTS the defendant's motion for summary judgment and enters judgment in favor of the defendant.